Opinion filed May 11, 2006


















 
 
 The Court on this day, June 8, 2006, has withdrawn this opinion and
 judgment dated May 11, 2006, and substituted the opinion and judgment dated
 June 8, 2006.
  
 
 







 
 
  
 
 




Opinion filed May 11, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00226-CV 

                                                    __________

 

                   PEISNER JOHNSON & COMPANY, L.L.P., Appellant

 

                                                             V.

 

      EAGLE
CONSTRUCTION AND ENVIRONMENTAL SERVICES, L.P.,

                                                        Appellee

 



 

                                          On
Appeal from the 91st District Court

 

                                                        Eastland County, Texas

 

                                             Trial
Court Cause No. CV-03-39456

 



 

                                                                   O
P I N I O N

 








This is a Deceptive Trade Practices Act claim.[1]  Eagle Construction and Environmental
Services, L.P. sued Peisner Johnson & Company, L.L.P. alleging that it
misrepresented the services that it would provide in connection with a sales
tax audit conducted by the Comptroller for the State of Texas. 
Following a bench trial, the trial court found that Peisner Johnson
violated the DTPA and awarded Eagle Construction $65,915.84 in damages and
conditional attorney=s
fees in the event of an appeal.  We
modify and affirm in part, reverse and render in part, and reverse and remand
in part.

                                                               Background
Facts

Eagle Construction is an environmental firm which
performs solid waste removal and remediation work.  The Texas
Comptroller=s Office
audited Eagle Construction in 2000 for the period of March 1, 1995, through
September 30, 1998.  Following the audit,
the comptroller assessed Eagle Construction $239,206.26 in taxes, penalties,
and interest.

Eagle Construction hired Peisner Johnson, a CPA
firm, to review the assessed tax deficiency. 
Peisner Johnson offered audit representation services and represented
that it could reduce or eliminate a client=s
sales tax liability.  Eagle Construction
agreed to pay Peisner Johnson 50% of any tax savings, which included refunds of
overpayments or reductions in the audit assessment, that resulted from Peisner
Johnson=s
work.  

After reviewing the comptroller=s audit and researching the relevant
factual and legal issues,  Peisner
Johnson found no basis for reductions in audit assessments or for a refund, and
it withdrew from its engagement with Eagle Construction.  Eagle Construction paid the comptroller=s full assessment in February 2002.

The comptroller then audited Eagle Construction
for the subsequent four-year period. 
Eagle Construction hired Gary Snapp to work on the second audit.  He identified several exemptions that might
apply to specific jobs included in the first audit.  Eagle Construction then hired a tax attorney
and filed a refund claim for the first audit. 
This resulted in a $47,000 refund. 
Eagle Construction=s
refund claim did not cover the entire period of the first audit because of a
four-year statute of limitations for refund claims.  See Overhead Door Corp. of Tex. v. Sharp, 970
S.W.2d 74, 76-78 (Tex. App.CAustin
1998, no pet.)(explaining how to determine tax code=s
limitations period).








Eagle Construction filed suit against Peisner
Johnson alleging negligent misrepresentation, fraud, breach of contract, and
violation of the DTPA.  The trial court
held a bench trial.  The court found that
Peisner Johnson violated the DTPA by representing that its services had
characteristics, uses, and benefits that they did not have; by representing
that its services were of a particular standard, quality, or grade when they
were of another; by advertising its services with the intent not to provide
them as advertised; and by failing to disclose information concerning its
services with the intent to induce Eagle Construction into a contract.  The trial court awarded Eagle Construction
$21,399.22 in actual damages, which was the amount of sales tax the trial court
found Eagle Construction paid in error on the first audit; $42,798.44 in
additional damages; and interest.  It did
not award Eagle Construction attorney=s
fees for trial but did conditionally award appellate attorney=s fees.

                                                                         Issues

            Peisner Johnson challenges the trial court=s judgment with four issues.  Peisner Johnson alleges that the evidence is
insufficient to establish (1) that its conduct was the cause of Eagle
Construction=s
damages; (2) the actual damage award; (3) that Peisner Johnson knowingly and
intentionally violated the DTPA; or (4) the appellate attorney=s fees award.  Eagle Construction asserts two cross
issues.  Eagle Construction contends that
the trial court erred by refusing to take judicial notice of its file for the
purpose of awarding attorney=s
fees and by refusing to award attorney=s
fees for the trial of this cause.

                                                              Standard
of Review 

Findings of fact in a bench trial have the same
force and dignity as a jury=s
verdict.  Catalina v. Blasdel, 881
S.W.2d 295, 297 (Tex.
1994).  When, as here, those findings are
challenged for factual or legal sufficiency, we apply the same standards as are
used for reviewing jury verdicts.  David
L. Smith & Assocs., LLP v. Advanced Placement Team, Inc., 169 S.W.3d
816, 819 (Tex.
App.CDallas
2005, no pet.).

We review a legal sufficiency or no-evidence
challenge by considering only the evidence and inferences that tend to support
the finding and by disregarding all evidence and inferences to the contrary.  Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002).  If more than a scintilla of evidence exists
to support the finding, the no-evidence challenge fails.  Id.  

We review a factual sufficiency challenge by
considering and weighing all of the evidence, not just that evidence which
supports the verdict.  Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex.
1996).  We may set aside the trial court=s finding only if it is so contrary to
the overwhelming weight of the evidence that the verdict is clearly wrong and
manifestly unjust.  Mar. Overseas
Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998).

                          Was
the Evidence Sufficient to Support a DTPA Cause of Action 

                                                as
Opposed to a Breach of Contract?

Peisner Johnson argues that it was retained to
identify or assist Eagle Construction in obtaining sales tax refunds, that
Eagle Construction=s suit is
essentially based upon the failure to identify refund claims, and that, thus,
this is simply a breach of contract action. 
Eagle Construction argues that Peisner Johnson=s
precontractual misrepresentations induced it into a contract and that these
misrepresentations were, therefore, outside the contract and actionable under
the DTPA.

Peisner Johnson contends that any
misrepresentation it may have made was no more than a statement that it would
fulfill its contractual duties.  The
parties agree that a mere breach of contract is insufficient to establish a
DTPA violation.  See Crawford v. Ace
Sign, Inc., 917 S.W.2d 12, 14 (Tex.
1996).  Courts have struggled to identify
the line separating conduct sufficient to support a DTPA claim from that
creating only a breach of contract.  If
the misrepresentation amounts to no more than a promise to perform under the
contract, no DTPA violation is shown.  Id.  Courts have, for example, held that the
failure to include a yellow page ad does not constitute a DTPA violation.  Helms v. Sw. Bell Tel. Co., 794 F.2d
188, 191 (5th Cir. 1986).[2]  Representations outside the contract,
however, can support a DTPA claim.  See,
e.g., Bekins Moving & Storage Co. v. Williams, 947 S.W.2d 568, 577
(Tex. App.CTexarkana
1997, no pet.)(misrepresentations by a moving company that it would use
different methods than those actually employed was actionable under the DTPA).

The determination of whether a DTPA violation C as opposed to a mere breach of
contract C has been
shown is a fact-driven inquiry.  Munawar
v. Cadle Co., 2 S.W.3d 12, 18 (Tex. App.CCorpus
Christi 1999, pet. denied).  But when the
facts are ascertained, the determination of whether a DTPA violation is shown
is a question of law.  Head v. U.S.
Inspect DFW, Inc., 159 S.W.3d 731, 743 (Tex. App.CFort
Worth 2005, pet. denied).








The Texas Supreme Court has recognized that there
is a duty separate and apart from the duties established by the contract to
abstain from inducing others into entering contracts through the use of
fraudulent misrepresentations.  Formosa
Plastics Corp. USA v.
Presidio Eng=rs &
Contractors, Inc., 960 S.W.2d 41, 46 (Tex. 1998). 
The trial court made several findings of fact relative to Peisner
Johnson=s
representations.  The court found that
Peisner Johnson represented that:

$                  
ninety-two percent of all audits were
over-assessments;

$                  
Peisner Johnson would reduce or eliminate its
client=s
liability;

$                  
state auditors only looked for items in
businesses where taxes should have been paid;

$                  
state auditors never took the time to look for
instances where a party may have overpaid taxes;

$                  
Peisner Johnson almost always found items that
should not have been paid or that were overpaid;

$                  
by calling Peisner Johnson a party would know
that it would be getting the lowest possible assessment;

$                  
Peisner Johnson would pursue every last penny;

$                  
Peisner Johnson would identify payments that
were previously made in error;

$                  
Peisner Johnson would come to Eagle Construction=s facilities to review its books as
part of its representation for the appeal of the audit; and

$                  
Peisner Johnson would identify every exemption
available.

 

The trial court further found that Eagle
Construction relied upon these representations. 
The trial court found that Peisner Johnson did not do many of the things
it promised it would do and failed to disclose essential limitations on the
scope of its services that created a conflict of interest between Peisner
Johnson and the client.[3]  The trial court found that Peisner Johnson
did not look at files at Eagle Construction=s
facility; that Peisner Johnson would decide which exemptions to pursue based upon
their profitability to itself and would not investigate or pursue items that
would cost it more time than would be worth; that, although it told customers
that it would attempt to find payments that were made in error, it did not do
so; and that Peisner Johnson did not attempt to find exemptions for contractors
because, from its past experience, contractors are not entitled to exemptions,
although it did not tell contractors this.








This conduct is sufficient to support a DTPA claim
because it involves misrepresentations beyond the contract.  The trial court did not merely find that
Peisner Johnson failed to perform as promised, it found that Peisner Johnson
failed to disclose a conflict of interest and that Peisner Johnson promised to
perform activities that it knew would not be performed.  Promising to perform an action in the future
that the actor has no intention of performing is a species of fraud.  See T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex. 1992). 


                                      Was
the Evidence Sufficient to Support a Finding 

                             that
Peisner Johnson Caused Eagle Construction Damages?

Peisner Johnson argues that the evidence is
insufficient to establish that its conduct caused Eagle Construction any
damage.  The DTPA requires proof that a
defendant=s conduct
was a producing cause of the plaintiff=s
injury.  Tex. Bus. & Com. Code Ann. '
17.50(a) (Vernon
Supp. 2005).  This requires proof that
the defendant=s action
was a substantial factor in bringing about the plaintiff=s
injury without which the injury would not have occurred.  Doe v. Boys Clubs of Greater Dallas, Inc.,
907 S.W.2d 472, 478 (Tex.
1995).  Producing cause is similar to
proximate cause because both require causation in fact. Prudential Ins. Co.
of Am. v. Jefferson Assocs., LTD, 896 S.W.2d 156, 161 (Tex. 1995). 
However, unlike proximate cause, producing cause does not require proof
of forseeability.  Bekins Moving &
Storage Co., 947 S.W.2d at 579. 
Because Eagle Construction=s
damages were its alleged sales tax overpayment, it was required to prove that
Peisner Johnson=s conduct
was the producing cause of this overpayment.

            A. 
What Was Eagle Construction Required to Prove to Establish Producing
Cause?








Peisner Johnson contends that Eagle Construction
was required to establish on a job-by-job basis that it was entitled to a sales
tax exemption that, if properly pursued, would have been granted by the
comptroller.  Because sales tax issues
are beyond common understanding, Peisner Johnson contends further that Eagle
Construction was required to make this showing with expert testimony.         Eagle Construction disputes this
characterization of its burden and the need for expert testimony contending
that, because this is a DTPA claim, it was unnecessary to prove what the comptroller
would have done.  It relies upon Latham
v. Castillo, 972 S.W.2d 66 (Tex.
1998), a suit filed against an attorney alleging unconscionable action under
the DTPA.  In Latham, the attorney
was hired to prosecute a medical malpractice action and falsely represented to
his clients that he had filed suit and was actively prosecuting the claim.  Plaintiffs contended that their attorney
acted unconscionably when he lied about his actions and that he took unfair
advantage of their trust.  The attorney
argued that this was essentially a Adressed-up
legal malpractice claim@
and that plaintiffs were required to prove that they would have won the medical
malpractice case to establish a DTPA cause of action.  Id.
at 69.  The supreme court disagreed,
noting that the DTPA was created to provide an additional remedy to consumers
when the common law fails. Id.  Plaintiffs did not allege negligent conduct,
which would have limited them to a negligence action, but deceptive
conduct.  Consequently, plaintiffs were
not required to prove the viability of their malpractice action to establish
unconscionable action.  Id.

The supreme court=s
holding does not mean that Eagle Construction is excused from proving that a
timely filed refund claim would have been successful simply because they
alleged a DTPA cause of action.  In Latham,
the supreme court noted that a DTPA plaintiff=s
claim is for the actual damage caused by the deceptive conduct.  Id.
at 69-70.  There, the DTPA claim was not
for the recovery plaintiffs would have received in a successful medical
malpractice action but for the mental anguish they suffered because of their
attorney=s false
statements. 

But, in this instance, Eagle Construction=s damage model was exactly what it
contends would have happened but for Peisner Johnson=s
deceptive conduct.  Consequently, Eagle
Construction was required to show that it would have received a tax refund if
Peisner Johnson had properly filed and prosecuted a refund claim.

The next question is what case was Eagle
Construction required to show that it would have won.  Peisner Johnson focuses in its analysis upon
what the comptroller would have done administratively and argues that Eagle
Construction was required to prove that the comptroller would have agreed with
its position.  This is incorrect because,
even though the comptroller=s
probable actions and statutory construction are highly relevant, the
comptroller does not have the final word. 
A dissatisfied taxpayer can appeal an adverse decision.  See, e.g., Fleming Foods of Tex., Inc. v.
Rylander, 6 S.W.3d 278 (Tex.
1999)(appeal by taxpayer of sales tax assessment). The exemptions upon which
Eagle Construction relies were created by the legislature.  Eagle Construction=s
obligation, therefore, was to show that it performed work which is nontaxable
because it falls within one or more of the legislature=s
sales tax exemptions.

B.  Did Eagle
Construction Establish that Peisner Johnson=s
Deceptive 

                 Conduct
Deprived It of a Sales Tax Refund?








The parties=
dispute concerns eighteen jobs.  The
trial court found that sixteen involved the removal of hazardous waste from
real property and two were instances where no taxable event occurred.  One instance was an improperly billed
invoice.  Eagle Construction billed the
wrong company.  It issued a credit memo
and then billed the correct company. 
Despite the credit memo, Eagle Construction was assessed sales tax on
the original invoice.  The second
instance involved a company that went into bankruptcy without paying its
invoice.  Eagle Construction was assessed
sales tax on this invoice even though it was not paid.

The trial court=s
characterization of Eagle Construction=s
work on the sixteen jobs as hazardous waste removal is critical to the
determination of whether a taxable event occurred.  The removal of Agarbage,
rubbish, or other solid waste@
is a taxable service unless it involves the removal of:

(A) hazardous waste;

 

(B) industrial solid waste;

 

(C) waste material that results from an activity
associated with the exploration, development, or production of oil, gas,
geothermal resources, or any other substance or material regulated by the
Railroad Commission of Texas under Section 91.101, Natural Resources Code;

 

(D) domestic sewage or an irrigation return flow,
to the extent the sewage or return flow does not constitute garbage or rubbish;
and

 

(E) industrial discharges subject to regulation by
permit issued pursuant to Chapter 26, Water Code.

 

Tex. Tax Code Ann. ' 151.0048(a)(3) (Vernon Supp. 2005).  If the trial court=s
characterization of Eagle Construction=s
services as hazardous waste removal is correct, then the services were not
taxable.

1. 
Was Expert Testimony Required?








Peisner Johnson contends that the distinction between
taxable and nontaxable waste removal activities is a technical, fact-specific
process.  Peisner Johnson contends
further that the taxpayer bears the burden of establishing an exemption by
clear and convincing evidence.[4]  Consequently, Peisner Johnson concludes that
Eagle Construction necessarily needed expert testimony to establish that, but
for Peisner Johnson=s
misconduct, it would have prevailed. 
Because Eagle Construction offered no expert testimony, Peisner Johnson
contends that the evidence is insufficient to support the trial court=s causation finding.

Eagle Construction concedes that, when the causal
link is beyond the common understanding of the fact-finder, expert testimony is
necessary. But, it contends that this case does not present such a situation
because it is a DTPA claim involving misrepresentations and the relevant
concepts are not beyond the fact-finder=s
ordinary experience.  Eagle Construction
relies upon Chapman v. Paul R. Wilson, Jr., D.D.S., Inc., 826 S.W.2d 214
(Tex. App.CAustin
1992, writ denied).  In that case, the
claimant sued dentists for damages arising from wisdom teeth extractions.  The trial court struck the claimant=s expert designation as a discovery
sanction and then granted defendants=
motion for summary judgment.  The Austin
Court of Appeals affirmed the discovery sanction and defendants= summary judgment on all grounds save
the claim that defendants violated the DTPA because of misrepresentations about
the pain claimant would experience during extractions.  Id.
at 220.  The court noted that expert
testimony is not necessary when the alleged acts and injuries are plainly
within the common knowledge of laymen. 
The court concluded that a jury could, without the help of an expert,
determine whether the defendants=
misrepresentations were the producing cause of the claimant=s pain. 
Id.  This does not mean that expert testimony is
never needed in a DTPA case.  The Austin Court
remanded the DTPA claim, not because it was a DTPA claim but because the
alleged damages were within a jury=s
ability to understand without expert testimony. 
Whether Eagle Construction needed expert testimony, therefore, requires
that we look beyond the label attached to its claim and examine the substance
of that claim.








Eagle Construction contends that Peisner Johnson
made specific representations to induce it to enter into the contract; that it
relied upon those representations; and that, because of this reliance, it
waived items which could have otherwise been timely challenged.  The trial court found that Peisner Johnson
made several misrepresentations about its services.[5]   However, Peisner Johnson does not challenge
these findings but instead challenges the trial court=s
finding that Eagle Construction=s
reliance resulted in tax overpayments.

When Peisner Johnson reviewed the comptroller=s first audit, it identified no sales
tax exemptions for Eagle Construction=s
waste removal activities.  When Eagle
Construction received the second audit notice, it hired Gary Snapp to review
the project files and the previous audit for information which would show the
comptroller that these jobs were not taxable. 
Snapp identified potential exemptions for hazardous waste removal.  Eagle Construction then hired a tax attorney
who filed a claim for taxes paid on jobs performed during a portion of the
period covered by the first audit that involved the removal of hazardous waste
and industrial solid waste.  The tax
attorney recovered approximately $47,000 for Eagle Construction.  That action did not encompass eighteen jobs
involved in the first audit because of limitations.  This is sufficient to create at least an
inference that Eagle Construction would have received a larger refund if
Peisner Johnson had performed its services as advertised.

2.  MetLife and Merchants Freight Jobs.

That inference was confirmed for at least two jobs
that did not require expert testimony and did not require construction of the
statutory sales tax exemptions for hazardous and industrial solid waste
removal.  Eagle Construction Vice
President Marc Walraven testified that Cura Emergency Services, an
environmental broker, hired Eagle Construction to excavate industrial solid
waste for their client MetLife.  Eagle
Construction incorrectly billed MetLife directly.  After the mistake was identified, Eagle
Construction issued MetLife a credit memo and billed Cura.  Eagle Construction was assessed $652 in taxes
and $412.64 in interest on the MetLife invoice C
even though there was actually no invoice to MetLife.  The second job was for Merchants
Freight.  This client went into
bankruptcy, and Eagle Construction was never paid.  Nonetheless, Eagle Construction was assessed
$49.21 in taxes and $70.16 in interest.








Peisner Johnson argues that this evidence is
legally or factually insufficient to establish producing cause.  Peisner Johnson contends that Eagle
Construction did not make a sufficient showing that the MetLife transaction
involved a double taxation problem because it did not provide evidence that it
paid sales tax when the invoice was corrected and resubmitted to Cura.  Eagle Construction was not required to show
that it paid sales tax on the corrected Cura invoice, but was obligated to show
that sales tax was assessed when no tax was owed.  Whether Eagle Construction did in fact pay
tax on the Cura invoice is relevant because, if not, Peisner Johnson could have
used this evidence as a defense.  If in
fact Eagle Construction only paid sales tax once on this transaction, then the
error could be described as harmless. 
However, Peisner Johnson=s
failure to present a defensive matter does not establish a no-evidence point
because Eagle Construction was not required to respond to challenges that may
have been raised by the comptroller but that were not presented by Peisner
Johnson to the trial court.

Peisner Johnson contends that Eagle Construction
never billed Merchants Freight for any sales tax and that this job does not
meet the State=s test
for a bad debt.[6]  Peisner Johnson=s
argument that Eagle Construction never billed Merchants Freight for sales tax
is immaterial.  The evidence established
that Eagle Construction was not paid for this job and, therefore, should not
have been assessed sales tax for it.   

When Eagle Construction=s
evidence is reviewed using a no-evidence standard, we find that it is legally
sufficient.  Eagle Construction provided
more than a scintilla of evidence to establish that neither transaction
constituted a taxable event.  Formosa
Plastics Corp. USA,
960 S.W.2d at 48.

When all the evidence is reviewed using an
insufficient evidence standard, we cannot say that the evidence supporting the
trial court=s
decision is so weak as to be clearly wrong and manifestly unjust.  Mar. Overseas Corp., 971 S.W.2d at
407. Peisner Johnson introduced no evidence contradicting Eagle Construction=s testimony for either job.  Instead, Peisner Johnson has consistently
argued that the evidence was too cursory to sustain Eagle Construction=s burden of proof.  Because the trial court had uncontradicted
testimony that Eagle Construction paid sales tax on two jobs that did not
constitute taxable events under the Texas Tax Code, the evidence is legally and
factually sufficient to establish that Peisner Johnson=s
conduct was the producing cause of damage.

              Was
the Trial Court=s
Actual Damage Award Supported by Adequate Evidence?








Eagle Construction introduced evidence that it
paid sales tax of $21,399.22 and interest of $14,255.31 on the eighteen
contested jobs.  The trial court accepted
Eagle Construction=s sales
tax overpayment claim but not its interest claim and awarded Eagle Construction
actual damages of only $21,399.22.  Eagle
Construction does not challenge the trial court=s
failure to include the interest it paid the State as damages.  Peisner Johnson argues that the evidence is
legally and factually insufficient to support the trial court=s actual damage award.  Peisner Johnson=s
argument falls into two categories. 
First, Peisner Johnson reviews each job individually and argues on a
job-by-job basis that the evidence is insufficient to support a damage finding
for that job.  Second, Peisner Johnson
argues that the parties had a 50% contingency fee contract and that, therefore,
even if it violated the DTPA, that error did not cost Eagle Construction all of
the tax it ultimately overpaid, but only one-half of that tax overpayment.

A.  Was
the Evidence Legally Sufficient on Each Individual Job?

Walraven was Eagle Construction=s Vice President and General Counsel
and testified about the eighteen disputed jobs. 
He did not testify as a sales tax expert but as a lay witness.  The trial court took judicial notice of the
relevant tax exemptions and allowed Walraven to provide a lay interpretation of
the statutes and to discuss the various transactions.

We have previously found that the evidence was
legally and factually sufficient to support a damage award on the MetLife and
Merchants Freight jobs.  We turn now to
the remaining sixteen jobs.  Walraven
testified that each job fell within the State=s
exemption for hazardous waste and industrial solid waste removal.  He testified that he was familiar with the
relevant sales tax laws in Texas
and that the disputed jobs were for the removal or collection of hazardous
waste or industrial solid waste.  For
each job, he identified the customer, the service provided, and the amount of
tax and interest paid.  He testified that
each of these was contained within the audit presented to Peisner Johnson, that
Peisner Johnson found no exemption, and that Eagle Construction paid the tax
assessed by the comptroller for each job. 
Because Walraven was testifying as a fact witness and not as an expert,
this testimony alone is insufficient to support the trial court=s judgment.  We are, therefore, required to review the
evidence on each individual job. 

B.  Was
the Evidence Legally and Factually Sufficient on Each Individual Job?

Peisner Johnson contends that Eagle Construction
failed to produce sufficient evidence that each individual transaction was
exempt because of inadequate or insufficient paperwork, insufficient
explanation of the job performed, or inconsistencies in record keeping.  Peisner Johnson also challenges the trial
court=s damage
calculations on individual jobs.








1. 
Geraghty & Miller

Walraven testified that Eagle Construction was
retained to remove Class II nonhazardous waste from a building in Abilene.  The project involved the removal of chromium,
mercury, and other metals from a shut-down Lockheed facility.  The trial court concluded that this was
nontaxable under the hazardous waste exemption. 
Peisner Johnson argues this finding is erroneous because the
waste-tracking forms characterize the waste as nonhazardous waste.  Peisner Johnson argues further that no
evidence was introduced showing that the waste was incidental to a process of
industry or manufacturing, as required by Tex.
Health & Safety Code Ann. '
361.003(16) (Vernon 2001), or that the waste was not municipal solid waste.

Much of Peisner Johnson=s
argument is premised upon a narrow construction of the relevant statutes by the
comptroller.  Statutory exemptions from
taxation are strictly construed.  Quorum
Sales, Inc. v. Sharp, 910 S.W.2d 59, 61 (Tex. App.CAustin
1995, writ denied).  A party claiming an
exemption bears the burden of showing that the activity clearly falls within
that statutory exemption; any doubt must be resolved in the comptroller=s favor.  Id.


Peisner Johnson introduced no contradictory
evidence for any of the challenged jobs.  
Nor did it offer any explanation for why Eagle Construction could obtain
a $47,000 refund on the more recent jobs but not on the earlier jobs. To
support its construction of the relevant tax provisions, Peisner Johnson relies
upon publications and pronouncements from the comptroller=s office.  The record does not indicate that this
material was provided to the trial court. 
Because it involves statutory construction and because the comptroller=s office has the exclusive jurisdiction
to interpret the scope of taxable services subject to a reasonableness
standard, we will consider it for guidance on the proper construction of the
relevant provisions.  See  Hammerman & Gainer, Inc. v. Bullock, 791
S.W.2d 330, 333 (Tex. App.CAustin
1990, no pet.)(if the comptroller=s
interpretation of a statute is reasonable, that interpretation will be accepted
over other reasonable interpretations). 
However, because this material was not presented to the trial court, we
cannot consider it as evidence of what the comptroller would have done in
response to a timely filed refund claim. 









Even though the comptroller is entitled to
deference, Texas Courts have disagreed with the comptroller=s construction of the hazardous waste
exemption.  In Rylander v. Associated
Technics Co., 987 S.W.2d 947 (Tex. App.CAustin
1999, no pet.), the Austin Court of Appeals was faced with a dispute over
asbestos removal.  The comptroller
contended that the removal of asbestos from a building involved two steps:  separation of the asbestos from the structure
that was taxable as remodeling services and disposal of the asbestos after
removal that was nontaxable.  The trial
court disagreed and found that asbestos removal services including the removal
of the asbestos from a building were not taxable.  Id.
at 949.  The Austin Court of Appeals
affirmed, finding that the comptroller=s
interpretation of the statute was inconsistent with legislative intent.  Id.
at 951.  The court concluded that the
legislature intended to encourage the removal of hazardous wastes and,
therefore, exempted these services from the state=s
sales tax.  Id. at 950.

We find the Austin Court
=s
analysis persuasive.  Section
151.0048(a)(3) plainly exempts hazardous and industrial solid waste removal.[7]  AHazardous
waste@ is defined
in the Health and Safety Code as Asolid
waste identified or listed as a hazardous waste by the administrator of the
United States Environmental Protection Agency under the federal Solid Waste
Disposal Act.@[8]  Walraven=s
testimony established that at least a portion of the job involved the removal
of chromium.  This has been recognized as
a hazardous waste by the State of Texas
and the EPA.  Slott v. State, 148
S.W.3d 624, 626-27 (Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d).  Peisner Johnson correctly notes that Walraven
described the waste as AClass
II nonhazardous waste.@  (emphasis added).  But, he also testified that this job fell
within a Section 151 exemption[9]
and that the waste it removed included chromium.  Even if this evidence is characterized as
inconsistent, it was the trial court=s
role to resolve any conflicts in the evidence. 
Dresser Indus., Inc. v. Lee, 880 S.W.2d 750, 754 (Tex. 1993).  We must assume that the trial court resolved
all conflicts in accordance with its verdict. 
Gen. Motors Corp. v. Sanchez, 997 S.W.2d 584, 592 (Tex. 1999).  We find that the evidence was legally and
factually sufficient to support the trial court=s
finding that Peisner Johnson=s
conduct was the producing cause of Eagle Construction=s
tax overpayment for this job.








Peisner Johnson also argues that the evidence is
legally and factually insufficient to support the trial court=s finding that Eagle Construction
sustained $14,600.70 in damages for this job. 
The comptroller=s
office issued a report dated June 23, 2000, which summarized the first
audit.  That report included auditor
notes which provided information on specific invoices.  These notes identified invoices by client
name, location, work description, taxable amount, and sales tax assessed.  The comptroller scheduled several Geraghty
& Miller invoices.  Five of these
were identified as decommission building and equipment services from September
11, 1996, through December 31, 1996.  The
notes indicated that sales tax of $14,600.71 was assessed on these
invoices.  This is also the amount
Walraven testified was paid to the comptroller for this job.  Peisner Johnson did not controvert any of
this evidence.

We have previously held that Eagle Construction
provided sufficient evidence to establish that this job was exempt from sales
tax.  We also find that the evidence was
sufficient to establish that it was overcharged $14,600.71 in sales tax.

2. 
Morrison Knudson

Walraven testified that this was an EPA-ordered
removal action under a CERCLA closure of an old hazardous waste landfill.  Eagle Construction introduced into evidence
the removal action work plan.  The plan
indicated that the project involved the removal and cleanup of
arsenic-containing soil to an action level of 100 parts per million.  Peisner Johnson argues this evidence is
insufficient because Eagle Construction did not present any evidence of the
arsenic level in the soil and, therefore, did not establish that the soil qualifies
as a hazardous waste.   

The documentation established that this was an
EPA-ordered cleanup site, that the soil was being remediated to meet EPA
established levels, and that the cleanup was being done to reduce the potential
for arsenic contamination or exposure. 
The evidence is factually sufficient to establish that the soil was
contaminated with arsenic; that arsenic is a hazardous waste; and, thus, that
Eagle Construction=s work
was a nontaxable service.

Peisner Johnson also contends that the evidence is
insufficient to support the trial court=s
damage finding.  The trial court found
that Eagle Construction was overcharged $2,824.90 for this job.  However, the total of applicable invoice
amounts in the auditor=s
notes is $2,779.52.  We will modify the
trial court=s
judgment to reflect an overcharge of $2,779.52. 
As modified, the trial court=s
damage finding is supported by legally and factually sufficient evidence.

3. 
Parsons Engineering








Walraven testified that Eagle Construction removed
PCBBcontaining transformers for Parsons
Engineering.  Peisner Johnson argues that
Eagle Construction did not establish an exemption for this job because a
representative of Eagle Construction=s
client signed the waste manifest certificate which provided: “I certify that
the waste materials removed from the above premises contains no hazardous
materials.”  The same manifest also
indicates Eagle Construction was removing a “PCB containing Transformer.”

As noted previously, we leave the resolution of
conflicting evidence to the trial court and assume the trial court resolved all
conflicting evidence in accordance with its verdict.  Gen. Motors Corp., 997 S.W.2d at 592; Dresser
Indus., Inc., 880 S.W.2d at 754.  We
assume, therefore, that the trial court concluded Eagle Construction removed a
transformer containing PCB, a hazardous waste. 
See Carter-Jones Lumber Co. v. Dixie
Distrib. Co., 166 F.3d 840 (6th Cir.
1999)(CERCLA action involving the improper disposal of PCBBcontaining transformers).  The evidence is legally and factually
sufficient to establish that Eagle Construction=s
removal of this transformer was a nontaxable service and, therefore, that
Peisner Johnson=s conduct
was the producing cause of damage for taxes paid in error on this job.

4. 
Quaker Oats

Walraven testified that Eagle Construction was
hired to provide an emergency response to a sodium hydroxide spill in a
chemical storage room.  Eagle
Construction collected and removed the sodium hydroxide and cleaned the spill
site.  Walraven testified that this was a
cleanup of hazardous waste on real property and, therefore, was exempt from
sales tax.  The trial court found that
this job was tax exempt pursuant to the hazardous waste exemption.

We are aware of no authority classifying sodium
hydroxide as a hazardous waste, and Walraven offered no other testimony to
support a hazardous waste exemption. 
Incorrect conclusions of law do not require reversal if the facts
support the judgment under a correct legal theory.  Westech Eng=g,
Inc. v. Clearwater Constructors, Inc., a Div. of Phelps, Inc., 835 S.W.2d
190, 196 (Tex. App.CAustin
1992, no writ).  








Section 151.0048(a)(3) also exempts the removal of
industrial solid waste.  The Health and
Safety Code defines A[i]ndustrial
solid waste@ as Asolid waste resulting from or incidental
to a process of industry or manufacturing, or mining or agricultural
operations.@[10]
Peisner Johnson argues that the comptroller excepts from this definition
anything that falls within the Health and Safety Code=s
definition of A[m]unicipal
solid waste@ which is
Asolid waste resulting from or
incidental to municipal, community, commercial, institutional, or recreational
activities, includ[ing] garbage, rubbish, ashes, street cleanings, dead
animals, abandoned automobiles, and other solid waste other than industrial
solid waste.@  Tex.
Health & Safety Code Ann. '
361.003(20) (Vernon 2001). 

The record does not indicate for what or how the
sodium hydroxide was being used. 
Consequently, we find that the evidence is legally insufficient to
support a finding that this job meets the requirements for a tax
exemption.  We reverse the trial court=s judgment as it relates to this job
and render judgment that Peisner Johnson=s
conduct was not the producing cause of any tax overpayment for this job.

5. 
Coca-Cola

Eagle Construction was hired to remove a
hydrochloric acid spill from a drainage ditch. 
Walraven testified that hydrochloric acid was a hazardous waste and that
this was a tax-exempt transaction. 
Hydrochloric acid has been classified as a hazardous waste.  New W. Urban Renewal Co. v. Westinghouse
Elec. Corp., 909 F. Supp. 219, 226 (D. N.J. 1995)(applying New Jersey=s Environmental Cleanup Responsibility
Act); Dana Corp. v. Am. Standard, Inc., 866 F. Supp. 1481, 1534 (N.D.
Ind. 1994)(applying CERCLA).  The evidence
is legally and factually sufficient to establish that this transaction was
tax-exempt and, therefore, that Peisner Johnson=s
conduct was the producing cause of Eagle Construction=s
damage for this job.

6. 
Air Products and Chemicals

Walraven testified that Eagle Construction removed
Class III industrial solid waste from the client=s
property.  The company=s records described this material as
bituminous asphalt and demolished reinforced concrete.  The client signed a certification that this
material was not a hazardous waste.








Bituminous asphalt and demolished reinforced
concrete are not hazardous waste. 
Peisner Johnson argues that the evidence is insufficient to establish
the industrial waste exemption because Eagle Construction failed to establish
that the waste material was incidental to a process of industry or
manufacturing or to mining or agricultural operations or that it was not
municipal solid waste.  We agree.  Walraven=s
classification of the material as Class III industrial solid waste, without
more, is factually insufficient to bring this transaction within an
exemption.  Walraven=s description of this as industrial
solid waste is, however, some evidence this was a tax-exempt job.  We reverse the trial court=s judgment as it relates to this job
and remand for further proceedings.

7. 
Albert Halff & Associates

Eagle Construction removed industrial solid waste,
Class II soil borings, for this client. 
Eagle Construction=s
documentation indicates that the soil borings were obtained while drilling for
samples during the investigation of a mop-water disposal site.  The documentation indicates that no spent
solvents were found.  Peisner Johnson
argues this does not show the disposal of a hazardous waste and is insufficient
to establish the industrial waste exemption. 
We agree.  We reverse the trial
court=s
judgment as it relates to this job and render judgment for Peisner Johnson.

8. 
Benchmark

Walraven testified that Eagle Construction cleaned
industrial solid waste from a 1,600-barrel storage tank at Cargill=s facility.  Eagle Construction=s
documentation indicates that it recovered 470 gallons of industrial wastewater
which contained gasoline.  Gasoline is
not classified as a hazardous waste. 
Walraven=s
testimony is some evidence that the industrial solid waste exemption applies,
but it is not factually sufficient to establish the exemption.  We reverse the trial court=s judgment as it relates to this job
and remand for further proceedings.

9. 
Enprotech Engineering

Eagle Construction removed Class I industrial
solid waste from the client=s
facility.  AClass
I industrial solid waste@
means:

[A]n
industrial solid waste or mixture of industrial solid waste, including
hazardous industrial waste, that because of its concentration or physical or
chemical characteristics:

 

(A) is toxic, corrosive, flammable, a strong
sensitizer or irritant, or a generator of sudden pressure by decomposition,
heat, or other means; and

 

(B) poses or may pose a substantial present or
potential danger to human health or the environment if improperly processed,
stored, transported, or otherwise managed.

 








Tex. Health & Safety
Code Ann. ' 361.003(2) (Vernon 2001).  Eagle Construction=s
documentation indicated that this waste material consisted of pads used to
clean a hydraulic oil spill.  Hydraulic
oil is not a hazardous material.  The
record does not support a finding that the industrial waste exemption or the
oil and gas exploration and production exemption applies to this job.  We reverse the trial court=s judgment as it relates to this job
and render judgment for Peisner Johnson.

10. 
F & D Head

Walraven testified that Eagle Construction removed
hazardous waste from a 1,000-barrel storage tank at F & D=s storage facility.  Eagle Construction provided documentation
executed by the waste generator and waste disposal facility confirming that
this material was indeed hazardous waste. 
Peisner Johnson correctly points out that this particular form had
preprinted language which certified that the waste had no hazardous material
and that the generator signed this certification.  The form also had handwritten notations that
stated that the material was hazardous waste. 
The handwritten notes appear to have been made by the same person who
signed the certification on behalf of the generator. 

To the extent this created a conflict in the
evidence, we must assume the trial court resolved that conflict in favor of its
verdict.  This evidence is sufficient to
establish that the tax exemption for hazardous waste removal applied and,
therefore, that Peisner Johnson=s
conduct was the producing cause of Eagle Construction=s
damage for this job.

11. 
E.A.P. Engineering Asphalt

Walraven testified that on this job Eagle
Construction removed industrial waste from a 1,200- barrel storage tank.  Eagle Construction=s
documentation indicates that this was a diesel storage tank, that rust scale
was removed, and that the tank was steam cleaned.  Rust scale is not a hazardous waste.  Walraven=s
testimony is some evidence that the industrial solid waste exemption applies,
but it is factually insufficient to support the trial court=s judgment.  We reverse the trial court=s judgment as it relates to this job
and remand for further proceedings.

12. 
ENSR








Eagle Construction removed contaminated soil which
Walraven testified was a Class I industrial solid waste.  Eagle Construction produced documentation
from both the generator and waste treatment facility confirming that this was
petroleum-contaminated soil.  The
generator=s
documentation consisted of executed copies of TWC-0332 forms used by the
Petroleum Storage Tank Division of the Texas Water Commission.  The trial court found that this job was
exempt pursuant to the hazardous waste exemption.  Petroleum is not a hazardous waste; but this
evidence is sufficient to establish the exemption for waste resulting from
exploration, development, or production of oil and gas.  There was, therefore, legally and factually
sufficient evidence that this job was tax exempt and that Peisner Johnson=s conduct was the producing cause of
Eagle Construction=s tax
overpayment.

13. 
Cummins Southern Plains

Walraven testified that Eagle Construction removed
Class II industrial solid waste from Cummins=s
gas facility.  Eagle Construction=s documentation indicated that this
waste was nonhazardous material.  Neither
Eagle Construction=s
documentation nor Walraven=s
testimony explained exactly what this material was; therefore, the evidence is
insufficient to establish the hazardous or industrial waste exemptions.  However, because this waste was removed from
a gas facility, it is sufficient to establish the oil and gas exemption.  The evidence is, thus, factually sufficient
to establish that this job was tax exempt and that Peisner Johnson=s conduct was the producing cause of
Eagle Construction=s tax
overpayment.

14. 
Entrix

Walraven testified that Eagle Construction removed
contaminated soil from a Ford dealership in Bryan, Texas.  Walraven was personally involved in this
project.  Walraven did not testify with
what the soil was contaminated.  Nor did
Eagle Construction produce any documentation from this job.  Eagle Construction did prepare a summary of
the disputed jobs which indicated that the soil was contaminated with
petroleum.  That document was offered for
the limited purpose of summarizing the audit and Eagle Construction=s exhibits for the disputed jobs.  The trial court admitted it for that limited
purpose.  Consequently, it cannot be used
to establish an evidentiary point outside Eagle Construction=s other exhibits.  We find that the evidence was legally
insufficient to establish that this job was tax exempt.  We reverse the trial court=s judgment as it relates to this job
and render judgment for Peisner Johnson.

15. 
Baker Performance Chemicals








Eagle Construction removed ethyline dichloride
from a 5,000-barrel storage facility at the client=s
Witco facility.  Ethyline dichloride is a
hazardous material.  See Geraghty and
Miller, Inc. v. Conoco Inc., 234 F.3d 917, 929 (5th Cir. 2000).  Peisner Johnson complains that Eagle
Construction did not produce a permit issued under Chapter 26 of the Texas
Water Code.[11]  Peisner Johnson confuses a safe-harbor
provision for the requirements of the entire statute itself.  While Section 151.0048(a)(3) provides an
exemption for work done pursuant to a Chapter 26 permit, that is in addition to
the other exemptions provided by the statute. 
The other exemptions are not conditioned on the presence of a permit but
on the nature of the work performed. 
This evidence is factually sufficient to establish that Eagle
Construction was engaged in hazardous waste removal and that the job was tax
exempt.  The evidence is, therefore,
factually sufficient to establish that Peisner Johnson=s
conduct was the producing cause of Eagle Construction=s
tax overpayment for this job.

16. 
USPCI

Walraven testified that Eagle Construction cleaned
a frac tank for this client.  Eagle
Construction did not provide any contemporaneous documentation for this
job.  Instead, Walraven referred to notes
from the auditor=s
exam.  These notes, which were prepared
by Peisner Johnson,  indicated that the
work involved a large frac tank.  The
trial court found that the hazardous waste exemption applied.  The evidence is insufficient to establish
that any hazardous wastes were removed from the frac tank.  The trial court could, however, have
reasonably determined that cleaning a frac tank B
which is used in connection with completing an oil well B
falls within the oil and gas exemption. 
We conclude, therefore, that the evidence was factually sufficient to
establish this was a tax-exempt transaction and that Peisner Johnson=s conduct was the producing cause of
Eagle Construction=s tax
overpayment for this job.

C. 
Summary of Individual Job Findings








We find that the evidence was factually and
legally sufficient to support the trial court=s
findings with respect to the following jobs: 
MetLife; Merchants Freight; Geraghty & Miller; Parsons Engineering;
Coca-Cola; F & D Head; ENSR; Cummins Southern Plains; Baker Performance
Chemicals; and USPCI.  We find that the
evidence was legally sufficient, but not factually sufficient, to support the
trial court=s
findings that Peisner Johnson=s
conduct was the producing cause of damage on the following jobs:  Air Products and Chemicals; Benchmark; and
E.A.P. Engineering Asphalt.  We find that
the trial court=s
liability finding on the Morrison Knudson job was supported by legally and
factually sufficient evidence, but we modify the trial court=s judgment to reflect a tax overpayment
of $2,779.52.  We find the evidence was
legally insufficient and, therefore, reverse and render judgment for Peisner
Johnson for the following jobs:  Quaker
Oats; Albert Halff & Associates; Enprotech Engineering; and Entrix.  Peisner Johnson=s
first issue is sustained in part and overruled in part.

D.  Did
the Trial Court Apply the Correct Measure of Damage?

Peisner Johnson also challenges the trial court=s damage award, contending that it
erroneously awarded Eagle Construction a greater recovery than it would have
achieved absent any DTPA misrepresentation. 
The DTPA provides two direct measures of damage for
misrepre-sentations.  One is
out-of-pocket, which measures the difference between the value the claimant
paid and the value he received.  The
second is benefit-of-the-bargain.  This
measures the difference between the value as represented and the value
received.  A DTPA claimant may recover
under the theory which provides the largest recovery.  See Arthur Anderson & Co. v. Perry
Equip. Corp., 945 S.W.2d 812, 817 (Tex.
1997).  Because Eagle Construction did
not pay Peisner Johnson for its services, the applicable measure of damage is
benefit-of-the-bargain.

Peisner Johnson argues that, if it had identified
every exemption claim raised by Eagle Construction and if the comptroller had
agreed on each claim, Eagle Construction would not have received the total
amount of the tax it paid but, pursuant to the parties=
contract, only one-half of that amount. 
The remaining one-half would have been paid to Peisner Johnson as
compensation.

Eagle Construction contends that, because this was
a DTPA claim, it was entitled to the full amount of its economic damages
despite the terms of the contract.  Eagle
Construction cites cases such as Fidelity & Casualty Co. of New York v.
Underwood, 791 S.W.2d 635 (Tex. App.CDallas
1990, no writ), overruled on other grounds by American Manufacturers Mutual
Insurance Company v. Schaefer, 124 S.W.3d 154 (Tex. 2003), for the
proposition that DTPA damages are not limited to contractual damages.  We agree. 
However, Eagle Construction did not offer any evidence of extra-contractual
damages, and Peisner Johnson is not relying on any liability-limiting provision
of the parties=
contract.








The thrust of Eagle Construction=s DTPA claim was that Peisner Johnson
misrepresented the services it would provide to lower Eagle Construction=s sales tax liability.  Peisner Johnson did not perform as
represented; consequently, Eagle Construction erroneously paid $21,399.22 in
sales tax.  Eagle Construction further
contends that, had it received the benefit of its bargain, Peisner Johnson
would have identified these overpayments and Eagle Construction would have
received a larger refund.  Eagle
Construction, however, would have realized only one-half of this refund.   We find that the trial court employed the
wrong measure of damage when it awarded Eagle Construction all of its tax
overpayment.  We reverse and remand to
the trial court for further proceedings on actual damage calculations.  Because the trial court=s actual damage award impacts
additional damages, we reverse the trial court=s
additional damage award and remand that to the trial court for further
proceedings as well.  Peisner Johnson=s second issue is sustained in part and
overruled in part.

                         Was
the Evidence Sufficient to Support the Trial Court=s Findings

                     that
Peisner Johnson Knowingly and Intentionally Violated the DTPA?

Peisner Johnson argues that the evidence is
legally or, alternatively, factually insufficient to support the trial court=s findings that it advertised services
with the intent not to sell them as advertised and that it failed to disclose
information concerning its services so as to induce Eagle Construction to enter
into a transaction that it would not have entered had the information been
disclosed.  Peisner Johnson argues the
evidence is insufficient because these findings require evidence of Peisner
Johnson=s intent
at the time of the transaction.

Failure to perform a promise does not constitute a
DTPA violation unless the promisor had no intention of performing the promise
at the time it was made.  Kuehnhoefer
v. Welch, 893 S.W.2d 689, 693 (Tex. App.CTexarkana
1995, writ denied).  This determination
can be inferred from the nature of the promise and the surrounding
circumstances.  Id. 









Peisner Johnson represented that it would reassess
previous tax statements and determine if there was any overpayment.  Peisner Johnson=s
representative, however, testified that Peisner Johnson might decide not to do
this if it did not feel it would be helpful. 
The representative also testified that he did not feel required to tell
clients that he was not reviewing certain transactions.  Peisner Johnson represented to Eagle
Construction before entering into a contract that it would pursue every last
penny, would identify payments that were previously made in error, and would
identify every exemption available.  In
reality, Peisner Johnson did not normally look at a contractor=s purchases to see if there had been an
overpayment of sales tax and only looked at transactions when it was profitable
for Peisner Johnson to do so.  As noted
previously, this created a conflict of interest because Peisner Johnson placed
its own financial interest ahead of the client despite representations
indicating that its conduct was geared to achieving the best possible result
for the client.  

This evidence is legally and factually sufficient
to establish that, when Peisner Johnson solicited Eagle Construction=s business, it made material
misrepresentations about its services because it promised to perform services
it knew would not be performed.  The
evidence is also sufficient to establish that Peisner Johnson failed to
disclose significant limitations and qualifications on its services before
entering into the contract.  There was no
testimony that the employees involved in the audit violated company policy by
not providing key information to Eagle Construction prior to entering into the
contract.  The testimony supports only
the opposite conclusion.  The
pre-contract written representations sent by Peisner Johnson to Eagle
Construction were apparently all authorized. 
Peisner Johnson employees=
decisions to not look at certain transactions, to concentrate only on
transactions that financially benefitted Peisner Johnson, and to not explain
any of this to Eagle Construction were all well within company policy.  The trial court could reasonably conclude
that these misrepresentations and omissions were made to induce Eagle
Construction into a transaction that it would not have otherwise entered into
and that they were done knowingly and intentionally.  Peisner Johnson=s
third issue is denied.

                 Is
the Award of Appellate Attorney=s
Fees Supported by Sufficient Evidence?

The trial court conditionally awarded Eagle
Construction $10,000 in attorney=s
fees in the event it was successful on an appeal to the court of appeals and an
additional $10,000 in attorney=s
fees in the event of a successful appeal to the Texas Supreme Court.  Peisner Johnson contends that the evidence is
legally and factually insufficient to support this award.  Because this part of this case is remanded to
the trial court for further proceedings, the interest of justice is better
served by affording the trial court the opportunity to examine this award in
light of subsequent events.  Accordingly,
Peisner Johnson=s fourth
issue is sustained to the extent that the trial court=s
conditional attorney=s
fee award is reversed, and this issue is remanded for further
consideration.  We express no opinion on
the appropriateness or amount of an award of appellate attorney=s fees.

         Did the Trial Court Err When It
Denied Eagle Construction Attorney=s
Fees for Trial?








Eagle Construction argues that, because it
prevailed on a DTPA claim, the trial court was required to award attorney=s fees for the underlying trial.  Eagle Construction=s
claim rests on Tex. Bus. & Com. Code
Ann. ' 17.50(d)
(Vernon Supp. 2005) which provides that A[e]ach
consumer who prevails shall be awarded court costs and reasonable and necessary
attorneys= fees.@  A prevailing party is one who pleads and
proves a DTPA cause of action and is awarded actual damages.  Indust-Ri-Chem Lab., Inc. v. Par-Pak Co., 602
S.W.2d 282, 295 (Tex. Civ. App.CDallas
1980, no writ).  

The record does not indicate that the trial court
denied Eagle Construction=s
entitlement to attorney=s
fees.  Instead, the record reflects that
the trial court found that Eagle Construction failed to prove attorney=s fees. 
The trial court=s
judgment provided for Aattorneys= fees in the amount of 0.@ 
Eagle Construction designated an expert witness to testify on attorney=s fees; however, the trial court
sustained  Peisner Johnson=s motion to strike that designation as
untimely.  Eagle Construction asked the
trial court to take judicial notice of attorney=s
fees under Tex. Civ. Prac. & Rem.
Code Ann. ' 38.004 (Vernon 1997), but the
court refused to do so beyond counsel=s
hourly rate.

The first question is does Section 38.004 apply to
a DTPA action?  This statute provides:

The court may take judicial notice of the usual
and customary attorney=s
fees and of the contents of the case file without receiving further evidence
in:

 

(1) a proceeding before the court; or 

 

(2) a jury case in which the amount of attorney=s fees is submitted to the court by
agreement.

 

Tex. Civ. Prac. & Rem.
Code Ann. ' 38.003 (Vernon 1997), however,
provides that A[i]t is
presumed that the usual and customary attorney=s
fees for a claim of the type described in Section 38.001 are reasonable.@ 
DTPA claims are not included in Tex.
Civ. Prac. & Rem. Code Ann. '
38.001 (Vernon
1997).  No court has found that Section
38.004 applies to a DTPA action; several have held exactly the opposite.[12]  Eagle Construction notes that the supreme
court approved of the use of Section 38.004 in a sanction situation in Cire
v. Cummings, 134 S.W.3d 835, 844 (Tex. 2004).  Because sanctions are beyond the scope of
Section 38.001, Eagle Construction argues the supreme court is signaling that
trial courts may take judicial notice of attorney=s
fees in a variety of circumstances and that it would be appropriate to do so in
a DTPA action.








We do not read the supreme court=s holding so broadly.  Because the legislature specifically
addressed attorney=s fees
for a DTPA action in Section 17.50 but did not list the DTPA in Section 38.001
and because every intermediate court to consider this issue has held that
attorney=s fees
must be proven in a DTPA action, we find that the trial court did not err when
it declined to take judicial notice of Eagle Construction=s attorney=s
fees.  In the absence of any evidence of
attorney=s fees,
we hold further that the trial court did not err when it refused to award fees
for the trial of this action.  Eagle
Construction=s
cross-issues are overruled.

                                                         Conclusion

The trial court=s
judgment is modified and affirmed in part, is reversed and rendered in part,
and is reversed and remanded in part. 
The trial court=s
judgment is affirmed to the extent it found that Peisner Johnson violated the
DTPA and that its conduct was the producing cause of damage.  The tax overpayment findings are affirmed for
the following jobs:  MetLife; Merchants
Freight; Geraghty & Miller; Parsons Engineering; Coca-Cola; F & D Head;
ENSR; Cummins Southern Plains; Baker Performance Chemicals; and USPCI.  The tax overpayment calculation for the
Morrison Knudson job is modified to reflect $2,779.52.  

The trial court=s
judgment is reversed, and judgment is rendered for Peisner Johnson on the
following jobs:  Quaker Oats; Albert
Halff & Associates; Enprotech Engineering; and Entrix.  This case is remanded to the trial court for
further proceedings on the following jobs: Air Products and Chemicals;
Benchmark; and E.A.P. Engineering Asphalt. 
The trial court=s
damage awards including appellate attorney=s
fees are also reversed and remanded for further proceedings as explained in
this opinion.

 

 

RICK STRANGE

JUSTICE

May 11, 2006

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.











     [1]Tex. Bus. & Com. Code Ann. ' 17.41 et seq. (Vernon 2002 & Supp. 2005).





     [2]See
also Cont=l Dredging, Inc. v. De-Kaizered, Inc., 120 S.W.3d 380, 390 (Tex. App.CTexarkana 2003, pet. denied) (misrepresenting that
contract has been completed, when in fact it has not, is not a DTPA violation because
the representation was within the bounds of the contract).





     [3]Because
Peisner Johnson did not disclose that it only pursued claims when it made
economic sense for them to do so, a client would not realize that Peisner
Johnson=s best interest, rather than its own, was the driving
factor.





     [4]In
North Alamo Water Supply Corp. v. Willacy County Appraisal District, 804
S.W.2d 894, 899 (Tex. 1991), the court held that tax exemptions will be
strictly construed because they place unequal burdens on taxpayers and that the
taxpayer bears the burden of clearly showing its entitlement to the exemption.





     [5]The
trial court found, for example, that Peisner Johnson misrepresented that it
would come to Eagle Construction=s facility and review Eagle Construction=s books, that Peisner Johnson represented that it would
review all of Eagle Construction=s transactions to look for refunds but in fact that it
did not review transactions which would cost Peisner Johnson more time than it
was worth, and that it failed to advise Eagle Construction that it never looked
for exemptions when it comes to contractors because it has been its experience
that contractors are not entitled to exemptions.





     [6]At
first blush, a claim discharged by bankruptcy would appear to be a bad debt by
definition.  However, Peisner Johnson
cites Tex. Tax Code Ann.  ' 151.426 (Vernon 2002) and 34
Tex. Admin. Code  ' 3.302(d)(4) (West 2006)(Sales Tax Rule
3.302(d)(4))  for the State=s bad debt test and argues that Eagle Construction did not
offer sufficient evidence to meet this test. 
These rules relate to transactions which are booked as income and are
later reclassified as bad debts.  The
record does not establish that either provision is even applicable.  Peisner Johnson notes that Eagle Construction
is liable for Athe sales tax due on its receipts.@  The testimony
is clearly sufficient to establish that for this job there were no receipts.





     [7]Tex. Tax Code Ann. ' 151.0048(a)(3)(A), (B) (Vernon Supp. 2005).





     [8]Tex. Health & Safety Code Ann. ' 361.003(12) (Vernon 2001).





     [9]The
trial court allowed Walraven to testify as a lay witness but not an
expert.  In light of his testimony that
Eagle Construction removed chromium, it is unnecessary for us to determine if
his statement that the job was subject to a Tex.
Tax Code Ann. ' 151.0048 (Vernon 2002 & Supp. 2005) exemption is
opinion or fact testimony.





     [10]Tex. Health & Safety Code Ann. ' 361.003(16) (Vernon 2001). 





     [11]Tex. Water Code Ann. ch. 26 (Vernon
2000 & Supp. 2005).





     [12]See,
e.g., Manon v. Tejas Toyota, Inc., 162 S.W.3d 743, 752 (Tex. App.CHouston [14th Dist.] 2005, no pet.); Nelson v.
Schanzer, 788 S.W.2d 81, 88 (Tex. App.CHouston
[14th Dist.] 1990, writ denied); Kaiser v. Nw. Shopping Ctr., Inc., 544
S.W.2d 785, 788 (Tex. Civ. App.CDallas 1976, no writ).