**DAVID L. SMITH AND ASSOCIATES, LLP, Appellant**

v.

**ADVANCED PLACEMENT TEAM, INC. and Renee Yousey, Appellees.**

No. 05–04–01317–CV.

Court of Appeals of Texas, Dallas.

Aug. 24, 2005.

Mark Randolph Lee, Lead Counsel, Austin, for Appellant.

William C. Odeneal, Odeneal & Odeneal, Dallas, for Appellees.

Before Justices MORRIS, LANG, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

In this case brought under the Telephone Consumer Protection Act (TCPA)[1] and Chapter 44 of the Texas Business and Commerce Code, David L. Smith and Associates, LLP appeals the trial court's take-nothing judgment granted in favor of Advanced Placement Team, Inc. and Renee Yousey (collectively APT). In four issues, Smith argues the trial court erred in (1) construing the statutory definition of advertisement and finding APT's transmissions were not advertisements; (2) finding that Smith invited the transmissions; (3) failing to find that APT had not responded within 24 hours of Smith's request to remove his telephone number; and (4) failing to find Advanced Placement Team and Yousey jointly and severally liable for the alleged TCPA violations. We affirm the trial court's judgment in part and reverse and remand in part.

## BACKGROUND

Between October 1999 and October 2000, Smith placed advertisements in *The Dallas Morning News* seeking resumes for staff accountants and bookkeepers. These advertisements included Smith's facsimile (fax) number and requested that resumes be faxed to Smith. Between October 1999 and February 2001, APT responded to the advertisements by faxing a total of 74 "newsletters" to Smith. The Smith employees who received the APT faxes removed them from the fax machine and put them in a box.

On May 7, 2003—more than two years after receiving the last fax from APT—Smith, via an attorney, sent a letter to APT alleging APT had violated the TCPA, offering to settle the issue if APT paid Smith a proposed sum and requesting that its fax number be removed from APT's faxing system. Smith asserted it never received a response to the letter. Yousey, the president of Advanced Placement Team, testified that after receiving Smith's letter, someone from APT attempted to contact Smith by telephone but did not send a written response; she stated the letter had not requested that a response be made in writing.

After receiving no response to its May 7, 2003 letter, Smith filed suit against APT on September 15, 2003, alleging violations of the TCPA and section 35.47 of the Texas Business and Commerce Code.[2] The trial court granted partial summary judgment in APT's favor, dismissing all of

---

1. *See* 47 U.S.C.A. § 227 (West 2001).

2. Smith pled the former statutory citation at TEX. BUS. & COMM.CODE § 35.47(d)(1). This statute was amended in 2001, renumbering the relevant language under section 43.152(1). *See* Act of May 17, 2001, 77th Leg., R.S., ch. 1429, §§ 1, 2, 2001 Tex. Gen. Laws 5102, 5106, 5108. The legislature sub-sequently renumbered the code, and the current version of the statute is found in section 44.152(1). *See* Act of May 20, 2003, 78th Leg., R.S., ch. 1275, § 2, 2003 Tex. Gen. Laws 4140, 4140. We will therefore refer to the statute using its current section number, section 44.152(1).

Smith's state law claims [3] other than the cause of action arising from Smith's May 7, 2003 demand letter to APT.[4] The remaining claim asserted that APT violated federal law under the TCPA by sending the 74 unsolicited faxes.

The trial court proceeded with a trial on the merits of the remaining claims and entered a take-nothing judgment against Smith. On Smith's request, the trial court entered findings of fact and conclusions of law. The trial court found, *inter alia*, that Renee Yousey is a principal of APT and was primarily responsible for the sending of the facsimile transmissions for her company; that due to the subject matter of Smith's advertisements and the placing of its facsimile number in the public domain, Smith effectively invited or solicited the transmissions from APT; and that of the 74 facsimile transmissions complained of by Smith, the last one was sent on January 30, 2001, more than two years before Smith filed this lawsuit. The court concluded as a matter of law that because Smith solicited or invited the transmissions, APT did not violate the TCPA. It also concluded that all of Smith's state law claims were barred by the two-year statute of limitations found in section 16.003(a) of the Texas Civil Practice and Remedies Code. The trial court did not enter additional findings when Smith requested them. This appeal followed.

### STANDARDS OF REVIEW

Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex.App.-Dallas 1997), *pet. denied*, 977 S.W.2d 562 (Tex. 1998) (per curiam). When a complete reporter's record is filed, the trial court's fact findings may be reviewed for legal and factual sufficiency under the same standards as jury verdicts. *Min v. Avila*, 991 S.W.2d 495, 500 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *see Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996) (per curiam). We do not review a trial court's conclusions of law for factual sufficiency. *See Ashcraft*, 952 S.W.2d at 910. Rather, we evaluate the conclusions independently, determining whether the trial court correctly drew the legal conclusions from the facts. *Id.; Dallas Morning News Co. v. Bd. of Trustees*, 861 S.W.2d 532, 536 (Tex. App.-Dallas 1993, writ denied). However, incorrect conclusions of law will not require a reversal if the controlling findings of fact will support the judgment under a correct legal theory. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ).

### TELEPHONE CONSUMER PROTECTION ACT

### *Express Permission or Invitation*

■ We initially address Smith's second issue. In this issue, Smith argues the court erred in finding that Smith gave APT prior express permission or invitation to receive APT's transmissions. This is a complaint against this factual finding, and we review the issue by examining all of the evidence. *See Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex.App.-Houston [14th Dist.] 1990, no writ).

---

3. Smith conceded in its response to APT's motion for summary judgment that most of its state law claims, other than the claim arising from the May 7, 2003 demand letter, were barred by limitations.

4. There is no signed summary judgment order in the record, but Smith agrees the summary judgment was so granted, and the record reflects the trial court's comments indicating it had granted summary judgment as detailed above before trial.

The TCPA makes it unlawful for any person in the United States "to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C.A. § 227(b)(1) (West 2001). "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." *Id.* § 227(a)(4). The TCPA provides a private right of action for a violation of the statute to enjoin violations and to recover the actual monetary loss from a violation or $500 in damages for each violation, whichever is greater. *Id.* § 227(b)(3).

The trial court specifically found that Smith "effectively invited or solicited the transmissions from APT." Based on this finding, the trial court concluded the transmissions were not "unsolicited advertisements" prohibited by the statute. According to the statute, if transmitted material is sent with "prior express invitation *or* permission," then it does not fall under the definition of "unsolicited advertisement." *See id.* § 227(a)(4). It is unsolicited advertisements that are prohibited from being transmitted. *See id.* § 227(b)(1). Thus, if a transmission is invited by the recipient *or* if the sender has express permission to send it, the transmission is not banned by the statute.

Smith argues that "mere distribution or publication" of a fax number does not equate to express permission or invitation. However, in the present case Smith did more than merely publish its number; Smith requested that resumes be faxed to the published fax number.

Smith agrees its classified listing was "an agreement to receive certain faxes." It argues, however, that it agreed to accept only resumes from persons applying for an employment position. Smith contends that "even if consent could be inferred or implied ... the statute plainly requires prior express consent." Smith focuses its argument on whether express *consent* was given to APT to send the transmissions. Smith, however, does not address the clear *invitation* to potential job seekers to send transmissions to Smith.[5] The TCPA allows transmissions to be sent if there is invitation *or* permission; both are not required. *Id.* § 227(a)(4).

The language of the classified advertisements that Smith placed is in the record. The advertisements read, "Local firm needs staff accountants & bookkeepers. Coit & LBJ area. Fax resume to ..." and "Local CPA firm needs staff accountants & bookkeepers. Fax resume to...." Neither type of wording used in any way restricts the invitation to potential applicants, nor does it exclude employment agencies.

### *Exhibits 2–15, 17–23, 25–63, 65–74*

Two distinct types of faxes were sent to Smith by APT. In what we will refer to as Group A, represented in the record as Plaintiff's Exhibits 2–15, 17–23, 25–63, and 65–74, each transmission contained a page that contained "mini-resumes" on one side, and newsletter stories on the other. The testimony showed that the persons portrayed on these transmissions were clients of APT who were looking for employment in the accounting or bookkeeping fields. Each transmission contained the descrip-

---

**5.** Smith cites *Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162 (S.D.Ind.1997), to argue that by advertising its services, APT's transmissions invoked liability for sending the fax.

The *Kenro* case, though, is distinguishable because it did not involve a situation where the transmissions had been invited by the recipient.

tions of these people by listing things such as their educational qualifications and employment history. A phone number was provided for the recipient to call and find out more information on any potential applicant.

Smith argues the information that was sent was not a "resume." However, even if we needed to define what constituted a resume, the transmissions sent by APT fulfill all the definitions as provided by Smith.[6] Smith also asserts that the resume had to contain each applicant's name and contact information. But nothing directs this Court to any such legal requirement. The transmissions contained a telephone number Smith could use to follow up and contact any of the potential applicants highlighted on APT's transmissions. Further, Smith's advertisement did not restrict the type of resume that could be sent. Nothing in the advertisement limited responses other than the type of position being sought, and there was evidence that the applicants represented on the faxes sought positions in accounting and bookkeeping—the positions Smith wanted to fill.

Having reviewed all of the evidence, we conclude the evidence that Smith gave APT prior express permission or invitation to receive APT's Group A transmissions is not so weak and is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Zieben,* 786 S.W.2d at 799. Smith's classified advertisements gave blanket consent to anyone reading it to fax a resume if interested in a position. The advertisement did not exclude agencies, and it was not restricted to individuals. Accordingly,

we conclude the evidence was factually sufficient to support the trial court's finding that Smith invited or solicited the transmissions from APT and that APT, due to the nature of its business, was entitled to respond to the invitation.

### *Exhibits 1, 16, 24, 64*

■ The other type of fax sent to Smith by APT—Group B—is made up of Plaintiff's Exhibits 1, 16, 24, and 64. Each of these faxes states, "Noticed you were looking for help!" The one-page fax listed fees and requested the recipient to call APT. No information at all similar to a resume was contained in the fax.

Having reviewed all of the evidence pertinent to APT's Group B faxes, we conclude the evidence that Smith invited APT to send these faxes is against the great weight and preponderance of the evidence such that it is clearly wrong and unjust. *See Zieben,* 786 S.W.2d at 799. These four faxes contain no information that was requested by Smith and nothing that could be construed as a resume. We resolve Smith's second issue against it in part as it relates to exhibits 2–15, 17–23, 25–63, and 65–74. We resolve Smith's second issue in its favor as it relates to exhibits 1, 16, 24, and 64.

### *Burden of Proof*

■ Smith also asserts a burden-of-proof argument and states APT had the burden of showing it had permission to send the faxes. Without supporting authority, Smith argues APT was required to call Smith and ask if Smith minded receiving faxes from APT. We disagree. As

---

6. Smith, quoting Webster's New Collegiate Dictionary, 988 (1977), The Merriam Webster Dictionary, 627 (1994), and The American Heritage Dictionary of the English Language (4th ed.), respectively, defined resume as "a short account of one's career and qualifica-tions prepared typically by an applicant of a position"; "a short account of one's career and qualifications usually prepared by a job applicant"; and "a brief account of one's professional or work experience and qualifi-cation."

stated above, the statute allows transmissions to be sent if there is invitation *or* permission. 47 U.S.C.A. § 227(a)(4). And as we concluded above, with the exception of exhibits 1, 16, 24 and 64, the evidence was sufficient to support the trial court's finding that Smith invited the transmissions according to the wording of the newspaper advertisement.

### Construing the Statute

In its first issue, Smith complains as follows: "The trial court erred in construing the statutory definition of 'advertisement,' and in finding that Appellees' transmissions were not advertisements." Smith does not direct this Court to where in the record the trial court construed the word "advertising," or where the trial court applied that construction and made the specific complained-of finding. We have reviewed the findings of fact and conclusions of law, and we do not find the trial court so construed the statute. Instead, the court concluded that, based on its finding that Smith invited the transmissions, the statute did not prohibit APT from sending the faxes.

### THE STATUTE OF LIMITATIONS

### *Applying the Statute of Limitations to the TCPA Claim*

■ Returning to Smith's second point of error and exhibits 1, 16, 24 and 64, we first note that in its findings of fact the trial court found that the last of the 74 facsimile transmissions was sent more than two years before Smith filed this lawsuit. In the motion for summary judgment APT argued that all of the faxes were sent more than two years before Smith filed its lawsuit, and were therefore time-barred by the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon 2002). Smith argued in response that the two-year limita-

tions period did not apply to the federal claims. We disagree. In so doing, we follow the reasoning of the Fourteenth Court of Appeals and conclude that in a private claim under the TCPA, the Texas two-year limitations period applies not only to the state law claims that arose more than two years prior to Smith's filing suit, but also to Smith's claims under federal law. *See Chair King, Inc. v. GTE Mobilnet,* 135 S.W.3d 365, 389–392 (Tex. App.-Houston [14th Dist.] 2004, pet. granted).

In *Chair King,* the court analyzed the language discussing the federal limitations period, the TCPA, and the state limitations periods. Under federal law, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C.A. § 1658(a) (West Supp.2005). As Smith points out, the TCPA was enacted after section 1658 was enacted and seems initially to fall under the section 1658 language. However, we must also address the language "except as otherwise provided by law" of section 1658, and the TCPA itself allows private damage claims in a state court "if otherwise permitted by the *laws or rules of court of a State.*" 47 U.S.C.A. § 227(b)(3) (emphasis added). Accordingly, a party may assert a private claim under the TCPA only if state law so permits. In this "reverse-*Erie*" situation, therefore, we apply state procedure laws to the TCPA claim. *See Chair King,* 135 S.W.3d at 390–91; *see also Exxon Corp. v. Choo,* 881 S.W.2d 301, 305–06 & n. 9 (Tex. 1994).

■ Under Texas law, if a tort is not expressly covered by a statute of limitations, we presume the tort is a trespass for purposes of determining the statute of limitations and apply the two-year limitations

period as per civil practice and remedies code section 16.003(a). *See Williams v. Khalaf,* 802 S.W.2d 651, 654 n. 2 (Tex.1990) (citing *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988)). The Texas Supreme Court has not held that the claims under the TCPA are governed by a statute of limitations other than section 16.003(a), and the TCPA itself does not provide a separate limitations period. Accordingly, we conclude that the two-year limitations period under section 16.003(a) applies to the federal law claims. *See Chair King,* 135 S.W.3d at 391. Based on this, the trial court's fact finding supports the trial court's judgment that Smith take nothing regarding all of the federal law claims, including exhibits 1, 16, 24, and 64. *See Westech Eng'g, Inc.,* 835 S.W.2d at 196.[7] We therefore affirm the judgment relating to the remaining federal law claims.

### Applying the Statute of Limitations to the Section 44.152 Claim

■ In addition to finding that the last of the 74 facsimile transmissions was sent more than two years before Smith filed this lawsuit, the trial court also concluded that Smith's remaining state law claim based on the May 7th demand letter was barred by limitations.[8] In its third issue Smith argues, *inter alia,* that this claim under section 44.152(1) is not barred by limitations because the cause of action accrued when APT failed to respond in writing within twenty-four hours of receiving Smith's May 7th demand letter. We agree.

Section 44.152 reads in part:

On receipt of oral or written notification from a recipient of a facsimile solicitation not to send any further facsimile transmissions to one or more telephone numbers specified by the recipient, the person making the facsimile solicitation:

(1) shall within 24 hours send the recipient a written acknowledgment of the recipient's notification....

TEX. BUS. & COM.CODE ANN. § 44.152(1) (Vernon Supp.2004–05). The act that Smith alleged APT failed to do was sending a written acknowledgment that APT had received Smith's notification. Smith sent the notification on May 7, 2003, which is less than two years before the filing date of the plaintiff's second amended petition on January 12, 2004. We therefore conclude the trial court erred in holding that Smith's section 44.152 claim was time-barred, and we sustain Smith's third point of error.

### CONCLUSION

The federal law claims are time-barred. Likewise, because of our resolution of the federal-law claims, and because we remand the issue addressing Smith's claims under section 44.152, we do not address Smith's fourth issue asserting the trial court erred in failing to find APT and Yousey jointly and severally liable for the alleged TCPA violations. There are no existing TCPA violations before this Court. Further-

---

7. Although not raised specifically by APT as a cross-point, we must affirm the judgment if it can be upheld on any legal theory (even if the trial court gives an incorrect reason for its judgment). *See Guar. County Mut. Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986); *Polk v. Braddock,* 864 S.W.2d 78, 79 (Tex.App.-Dallas 1992, no writ).

8. The trial court actually based its conclusion on the predecessor to section 44.152, section 35.47, which is what Smith pled in its original, first, and second amended petitions. The trial court's findings do not address section 44.152, but the substance of the statute did not change with the renumbering. It is clear from the trial court's findings and the record that all of Smith's state law claims were dismissed, including section 44.152.

more, we need not address Smith's request for prejudgment interest, nor do we address its motion for the Court to take judicial notice of a subsequent lawsuit; any subsequent lawsuit is not dispositive of any issue in this appeal. *See* Tex.R.App. P. 47.1.

We affirm the trial court's take-nothing judgment relating to the federal law claims. We reverse the portion of the trial court's judgment dismissing Smith's claim under section 44.152 of the business and commerce code and remand the issue to the trial court for further proceedings. We affirm the trial court's judgment in all other respects.