NUMBER 13-06-332-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 
 

LOUISE ELIZABETH HURST, Appellant,


v.
 


TEXAS DEPARTMENT OF ASSISTIVE AND

REHABILITATIVE SERVICES; AND TERRY

MURPHY, IN HIS OFFICIAL CAPACITY AS

COMMISSIONER OF THE TEXAS DEPARTMENT

OF ASSISTIVE AND REHABILITATIVE SERVICES; 

AND ALBERT HAWKINS, AS EXECUTIVE 

COMMISSIONER OF THE HEALTH AND

HUMAN SERVICES COMMISSION, Appellees.

 


On appeal from the 201st District Court of Travis County, Texas.


 




MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Benavides


Memorandum Opinion by Justice Benavides


 

 Appellant, Louise Elizabeth Hurst, appeals from a trial court's order granting a plea
to the jurisdiction filed by appellees, the Texas Department of Assistive and Rehabilitative
Services; Terry Murphy, the department's commissioner; and Albert Hawkins, the executive
commissioner of the Health and Human Services Commission (collectively "DARS"). Hurst
argues that: (1) the trial court erred by applying the 30-day filing deadline found in Texas
Government Code section 2001.176 to her claim; (2) the trial court erred by dismissing her
claims for declaratory relief; (3) DARS waived sovereign immunity by accepting federal
funds pursuant to 29 U.S.C. §§ 701-796 (the "federal Rehabilitation Act") or by adopting
title 40, Texas Administrative Code, section 107.413(a) (1)
; and (4) DARS's policy of
prohibiting benefits for exploratory surgery is contrary to law. See 29 U.S.C. §§ 701-796;
Tex. Gov't Code Ann. § 2001.176 (Vernon 2005); 40 Tex. Admin. Code § 107.413 (2003),
repealed by 32 Tex. Reg. 4778 (2007). We affirm, in part, and reverse and remand, in
part.

I. Background

 In June 2002, Hurst was diagnosed with cervical spine damage. Her doctors
informed her that if left untreated, Hurst could die or become paralyzed. She applied for
rehabilitation assistance from DARS. (2) DARS initially determined that Hurst was eligible for
rehabilitative services. It initiated an evaluation of Hurst's situation and attempted to
formulate an individualized plan so that Hurst could return to employment.

 DARS referred Hurst to several doctors over the course of the next year, and all the
doctors recommended surgical fusion of her vertebrae. On March 31, 2003, DARS
informed Hurst that the proposed surgery was an "exploratory surgery," for which DARS
would not pay. DARS denied Hurst any further medical treatment and refused to provide
further services. 

 Hurst filed an appeal with DARS. An administrative hearing was held on August 19,
2003. The hearing officer affirmed DARS's decision by a ruling dated September 23, 2003. 
Hurst then filed a motion for reconsideration. DARS denied the motion on October 24,
2003. 

 Hurst filed suit in federal court, relying on title 40, Texas Administrative Code,
section 107.413. See 40 Tex. Admin. Code § 107.413(a). Once in federal court, DARS
moved to dismiss based on Texas's sovereign immunity under the Eleventh Amendment
to the United States Constitution. See Hurst v. Tex. Dep't of Assistive & Rehabilitative
Servs., 482 F.3d 809, 809 (5th Cir. 2007), cert. denied, 128 S.Ct. 490 (2007). As part of
its motion to dismiss in federal court, DARS asserted that the district court should abstain
from exercising jurisdiction because Hurst "has a timely and adequate remedy in state
court." Hurst argued in response that by accepting federal funds under the federal
Rehabilitation Act, 29 U.S.C. §§ 701-796, Texas waived its sovereign immunity. The
district court held that the Rehabilitation Act did not condition the receipt of federal funds
on a waiver of sovereign immunity. Hurst, 482 F.3d 809. Accordingly, on September 22,
2005, the federal district court dismissed Hurst's action without prejudice. (3)

 On October 25, 2005, Hurst filed the underlying action in Travis County District
Court, seeking several different forms of relief. First, she asserted that she was appealing
DARS's decision to deny her benefits under Texas Government Code sections 2001.171-.178. See Tex. Gov't Code Ann. §§ 2001.171-.178 (Vernon 2000). Second, she
requested a declaratory judgment under the Uniform Declaratory Judgment Act ("UDJA"),
declaring that DARS's policy of prohibiting "exploratory back surgery" is unauthorized and
contrary to the federal Rehabilitation Act. See Tex. Civ. Prac. & Rem. Code Ann. §§
37.001-.011 (Vernon 2008). Third, she requested an injunction ordering DARS to approve
and pay for her treatment. 

 DARS filed a plea to the jurisdiction, arguing that under the doctrine of sovereign
immunity, it was immune from suit. First, DARS argued that to invoke the trial court's
jurisdiction to review its administrative order, Hurst was required to file suit within 30 days
after the order became final. See Tex. Gov't Code Ann. § 2001.176(a) (Vernon 2000). 
Because Hurst did not file her state-court action until two years after the administrative
decision, DARS argued that the trial court lacked jurisdiction over the case. Second,
DARS argued that neither the federal Rehabilitation Act nor DARS's regulations waived
sovereign immunity. Finally, DARS argued that the UDJA is merely a procedural tool for
claims already within the trial court's jurisdiction; therefore, the UDJA did not confer
jurisdiction on the trial court. 

 In response, Hurst first argued that the trial court should apply a two-year statute of
limitations because section 2001.176 of the Texas Government Code conflicted with the
federal Rehabilitation Act. Second, she argued that the federal Rehabilitation Act provided
an independent basis for the court's jurisdiction and that Texas waived its sovereign
immunity by accepting federal funds. Third, Hurst argued that sovereign immunity does
not bar her claim for declaratory relief, which was for prospective relief only. 

 The trial court held a hearing on January 30, 2006, and it granted DARS's plea to
the jurisdiction on the same day, dismissing Hurst's suit. Hurst filed a motion for new trial. 
In her motion, she asserted for the first time that the 30-day limitation in government code
section 2001.176 should be tolled. See Tex. Civ. Prac. & Rem. Code Ann. § 16.064
(Vernon 2008). Hurst's motion was overruled by operation of law, and this appeal ensued. (4)

II. Standard of Review and Applicable Law

 We review a trial court's ruling on subject-matter jurisdiction de novo. Tex. Natural
Resource Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). When reviewing a trial
court's order on a plea to the jurisdiction, a court of appeals should consider only the
"pleadings and evidence pertinent to the jurisdictional question." Jenkins v. Entergy Corp.,
187 S.W.3d 785, 795 (Tex. App.-Corpus Christi 2006, pet. denied) (citing County of
Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002)).

 "A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause
of action without regard to whether the claims asserted have merit." Bland Indep. Sch.
Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). Although the claims form the context of the
jurisdictional inquiry, the plea should be decided "without delving into the merits of the
case." Id. In some circumstances, a court will be unable to determine the jurisdictional
question without some development of the evidence in the case; in those circumstances,
the trial court has discretion to refuse to decide the jurisdictional question until after the
case has progressed past the preliminary hearing stages. Id. But a party should not be
required to put on their entire case in order to establish that they are entitled to be in court
in the first place. Id. ("The purpose of a dilatory plea is not to force the plaintiffs to preview
their case on the merits but to establish a reason why the merits of the plaintiffs' claims
should never be reached."). 

 Texas Rule of Appellate Procedure 41.3 was recently added to clarify that because
this is a transfer case, we are bound to follow the precedent of the transferor court, which
in this case is the Austin Court of Appeals:

 In cases transferred by the Supreme Court from one court of appeals to
another, the court of appeals to which the case is transferred must decide
the case in accordance with the precedent of the transferor court under
principles of stare decisis if the transferee court's decision otherwise would
have been inconsistent with the precedent of the transferor court. The court's
opinion may state whether the outcome would have been different had the
transferee court not been required to decide the case in accordance with the
transferor court's precedent.


Tex. R. App. P. 41.3.


III. Analysis

 Hurst raises several arguments in favor of jurisdiction. Hurst argues that (1) the trial
court erred by applying the 30-day filing deadline found in Texas Government Code section
2001.176 to her claim for judicial review of DARS's decision; (2) DARS waived sovereign
immunity by accepting federal funds pursuant to the Rehabilitation Act, 29 U.S.C. §§ 701-796 or by adopting 40 Tex. Admin. Code § 107.413; and (3) the trial court erred by
dismissing her claims for prospective, declaratory relief. See 29 U.S.C. §§ 701-796; Tex.
Gov't Code Ann. § 2001.176; 40 Tex. Admin. Code § 107.413. For the reasons we explain
below, we hold that Hurst's administrative appeal is barred by sovereign immunity because
she failed to comply with the mandatory, jurisdictional requirements found in section
2001.176. (5) However, we agree with Hurst that the trial court erred by dismissing her claim
for prospective, declaratory relief, which does not implicate the doctrine of sovereign
immunity.

A. Thirty-day Filing Deadline


 Hurst asserts that the trial court erroneously applied the 30-day deadline found in
Texas Government Code section 2001.176 as a jurisdictional bar to her suit. See Tex.
Gov't Code Ann. § 2001.176. In this regard, she raises three distinct arguments. First,
she asserts that the trial court should have applied a two-year statute of limitations
because the government code conflicts with the federal Rehabilitation Act. Compare 29
U.S.C. §§ 701-796, with Tex. Gov't Code Ann. § 2001.176. Second, she asserts that
section 2001.176 is merely a statute of limitations, not a jurisdictional requirement. See
Tex. Gov't Code Ann. § 2001.176. Because section 2001.176 is a statute of limitations,
she argues that it can be tolled under Texas Civil Practice and Remedies Code section
16.064 and under equitable tolling principles. See Tex. Civ. Prac. & Rem. Code Ann. §
16.064. Finally, Hurst argues that application of the 30-day filing deadline violates the Due
Course of Law guarantee in article 1, section 19 of the Texas Constitution. See Tex.
Const. art. 1, § 19. We disagree with her first two arguments, and her third argument was
not preserved in the trial court.

 1. Two-year limitations period

 Hurst argues that the filing deadline in government code section 2001.176 must be
read in conjunction with the federal Rehabilitation Act, and to the extent of a conflict, the
federal Rehabilitation Act must control. Specifically, she argues that federal courts have
applied a two-year limitations period to claims under the Individuals with Disabilities
Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(A), (6) which is nearly identical to the provision
in the federal Rehabilitation Act that provides for review of administrative decisions. See
29 U.S.C. § 722(c)(5)(J)(i). (7) She refers this Court to Scokin v. Texas, 723 F.2d 432, 438
(5th Cir. 1984) and Texas Advocates Supporting Kids with Disabilities v. Texas Education
Agency, 112 S.W.3d 234, 236 (Tex. App.-Austin 2003, no pet.). We disagree that these
cases require the application of a two-year statute of limitations.

 In Scokin, the Fifth Circuit was required to determine what statute of limitations to
apply to an action filed in federal district court under the Education of All Handicapped
Children Act (EAHCA), which was the precursor to the IDEA. 723 F.2d at 435. The
EAHCA provided that a party, who was aggrieved by a decision by a state agency
administering the EAHCA, could file suit in federal or state court. Id. The EAHCA did not
provide a limitations period or filing deadline. Id. The court, therefore, had to determine
what limitations period should apply. Id. It reiterated the general rule that federal courts
in these situations look to state law to find an analogous limitations period that is consistent
with the underlying purposes of the act:

 When a federal statute creates a right but does not specify a period of
limitations, federal courts generally determine which state cause of action is
most analogous to the federally created cause of action. If the limitations
period applicable to the analogous state cause of action is consistent with
the underlying policy of the federal act, the court will borrow that limitations
period and apply it to the federal cause of action. (8)
 


Id. at 436. In other words, because there is no federal limitations period, the federal court
"borrows" a state limitations period. 

 The Fifth Circuit considered whether the 30-day filing deadline in the Texas
Administrative Procedure Act should apply, and it determined that the 30-day period was
inconsistent with the purposes of the EAHCA. Id. The court held that the EAHCA's goal
of parental involvement in the handicapped child's education would be thwarted by forcing
parents to make a decision to appeal within such a short period of time, in part, due to the
child's changing educational needs:

 A short limitations period is contrary to the Act's goal of parental involvement. 
Thirty days is not enough time for parents to determine whether to pursue
judicial review of their complaint. A decision to jump from an administrative
process to federal court may involve obtaining or changing counsel. Parents
may want to conduct further testing of their child to better evaluate the
agency's decision. While such testing will probably be conducted before and
during the administrative hearings, a child's needs may change during the
process, and parents may want an updated evaluation before deciding
whether to go to court. In addition, because a child's welfare is an emotional
issue, parents may need time to reflect before choosing a course of action. 


Id. at 437. Hurst argues that the federal Rehabilitation Act has a similar purpose--to
protect individuals requiring vocational rehabilitation--that requires a longer filing period. 
 Hurst, however, provides no explanation for how the Fifth Circuit's precedent applies
to this state-court proceeding. The federal Rehabilitation Act does not provide a limitations
period. See Chair King, Inc. v. GTE Mobilnet of Houston, Inc., 135 S.W.3d 365, 389 (Tex.
App.-Houston [14 Dist.] 2004), rev'd on other grounds, 184 S.W.3d 707 (Tex. 2006) ("[I]f
Congress has enacted a statute that requires a four-year limitations period for the federal
claim asserted in this case, then that federal law would preempt any contrary state-law
analysis."). In the absence of a direct conflict with federal law, we must apply state
procedural law to Hurst's claims filed in state court, whether her claims are characterized
as federal or state law causes of action. See Exxon Corp. v. Choo, 881 S.W.2d 301, 306
n.9 (Tex. 2000); see also Smith & Assocs., LLP v. Advanced Placement Team, Inc., 169
S.W.3d 816, 822 (Tex. App.-Dallas 2005, pet. denied). The filing deadline in government
code section 2001.176 applies to Hurst's claims in state court. Smith & Assocs., LLP, 169
S.W.3d at 822. 

 The Austin Court of Appeals' decision in Texas Advocates Supporting Kids with
Disabilities v. Texas Education Agency does not compel a different result. See 112
S.W.3d at 236. In that case, the Texas Education Agency adopted a regulation that
required parties seeking judicial review of an agency determination under the IDEA to file
suit within 90 days after the administrative determination. Id. at 236. The Austin Court of
Appeals held that the agency did not have authority to adopt the 90-day filing deadline, and
it applied a two-year statute of limitations to an IDEA claim in state court. Id. at 241. The
court's ruling was based on the separation of powers doctrine. Id. It held that the agency
could only act within its delegated authority, and the Texas Legislature had not delegated,
expressly or impliedly, the authority to adopt a limitations period applicable to suits for
judicial review. Id. 

 In Texas Advocates, the court was careful to note that neither the Texas Legislature
nor the United States Congress had adopted a limitations period applicable to IDEA claims. 
Id. Hurst's case is different--here, the Texas Legislature has provided a method for
judicial review by enacting government code section 2001.176 and has imposed a filing
deadline. Tex. Gov't Code Ann. § 2001.176. This case does not involve an allegation of
an improper exercise of power by an agency. For all the foregoing reasons, we hold that
the 30-day filing deadline found in section 2001.176 applies to Hurst's suit for judicial
review of DARS's administrative decision. 

 2. Limitations Period or Jurisdictional Bar?

 Next, Hurst argues that the filing deadline in section 2001.176 is merely a limitations
period that must be raised by an affirmative pleading, not by a plea to the jurisdiction. As
such, she reasons that the time period can be tolled. Hurst's argument, however, is
inconsistent with the Austin Court of Appeals' binding precedent. 

 Hurst argues that in Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71 (Tex. 2000), the
Texas Supreme Court explained that statutory prerequisites to suit are not jurisdictional. 
Hurst argues that this rule did not change until the Texas Legislature adopted section
section 311.034 of the government code, which became effective on September 1, 2005. 
See Tex. Gov't Code Ann. § 311.034 (Vernon 2005). (9) She argues that the statute only
applies prospectively, and because DARS's decision to deny benefits occurred before the
statute became effective, it does not apply to her case. See, e.g., Dallas County v. Posey,
239 S.W.3d 336, 339 (Tex. App.-Dallas 2007, pet. filed). 

 The problem with Hurst's argument is that after Dubai, but before government code
section 311.014 became effective, the Austin Court of Appeals specifically held that filing
deadlines in administrative appeals constitute a different type of statutory prerequisite that
remained jurisdictional in spite of the Texas Supreme Court's decision in Dubai. Heart
Hosp. IV, L.P. v. King, 116 S.W.3d 831, 834-37 (Tex. App.-Austin 2003, pet denied); see
also Brown v. Texas Educ. Agency, No. 03-00-00433-CV, 2002 WL 1377857, at *1-2 (Tex.
App.-Austin 2002, pet. denied) (not designated for publication). In Heart Hospital, the
Austin Court of Appeals considered whether the 14-day filing deadline applicable to judicial
appeals from decisions of the Texas Workforce Commission was a jurisdictional
requirement. Heart Hosp., 116 S.W.3d at 834. It reasoned that because filing deadlines
limit the classes of cases that a district court may consider, the filing deadline is not merely
a statutory prerequisite but is a jurisdictional requirement:

 We must begin our analysis by first determining whether compliance with the
statutory fourteen-day deadline is jurisdictional. Failure of a party to comply
with statutory requirements is no longer an absolute bar to review of an
agency determination. Some statutory prerequisites, however, remain
jurisdictional. This Court has distinguished "statutory prerequisites" from
those matters that are "traditionally and undoubtedly elements of
subject-matter jurisdiction." A jurisdictional statutory requirement is one that
"defines, enlarges, [or] restricts the class of causes the court may decide or
the relief the court may award." A statutory requirement that does none of
these may nevertheless affect a plaintiff's right to relief, but it is not
jurisdictional. Applying these principles, this Court has held that failure to
exhaust all administrative remedies, including the timely filing of a motion for
rehearing, is jurisdictional "because the filing of the motion for rehearing
defines and restricts the kind of case a district court may hear." Similarly, the
statutory fourteen-day deadline also defines and restricts the kind of case
that district courts may hear. 


Id. at 834-35 (citing Dubai, 12 S.W.3d at 76) (internal citations omitted).

 Thus, even if we accepted Hurst's argument that DARS is seeking to apply 
government code section 311.034 retroactively to her case, the Austin Court of Appeals
would have held that the filing deadline in government code section 2001.176 was a
jurisdictional requirement even before that statute took effect. Id.; see also Brown, 2002
WL 1377857, at *1-2 (not designated for publication) (holding section 2001.176 is a
jurisdictional requirement). Accordingly, we must reject Hurst's argument, even though we
might have decided the issue differently had we been applying precedent from our own
Court.

 Our determination that section 2001.176's filing deadline is jurisdictional also
precludes Hurst's tolling theories. In Heart Hospital, the Austin Court of Appeals held that 
the tolling provision in Texas Civil Practice and Remedies Code section 16.064 does not
apply to special statutory proceedings such as judicial review of agency determinations. 
Heart Hosp., 116 S.W.3d at 836. Furthermore, it held that because filing deadlines are
jurisdictional, equitable tolling theories do not apply. Id. 

 Hurst argues that DARS should be equitably estopped from asserting limitations
because it represented to Hurst and to the federal district court that she had a timely and
adequate state remedy. While we do not condone the apparent "bait and switch" tactics
employed by DARS when it (1) represented that Hurst could file suit in both state or federal
court, (2) represented to the federal district court that Hurst still had a state remedy, and
(3) then moved to dismiss her state court action based on the filing deadline, we are
unable to remedy the situation because the filing deadline was jurisdictional. Accordingly,
we must reject Hurst's arguments. Id. ("Once King failed to comply with that statutory
prerequisite, his cause could not be saved by a tolling provision applicable only to statutes
of limitations; the district court simply did not have jurisdiction.").

 3. Due Course of Law

 Hurst argues that DARS's inconsistent representations to the federal district court
and to the trial court below, regarding the availability of a state-court remedy, violate the
Due Course of Law guarantee in the Texas Constitution. Tex. Const. art. 1, § 19. DARS
correctly points out that Hurst never raised this argument in the trial court. Accordingly,
Hurst waived this argument. Tex. R. App. P. 33.1; Ratsavong v. Menevilay, 176 S.W.3d
661, 671 (Tex. App.-El Paso 2005, pet. denied); Hernandez v. State Bar of Tex., 812
S.W.2d 75, 78 (Tex. App.-Corpus Christi 1991, no writ).

B. DARS's Acceptance of Federal Funding and Adoption of Regulations

 Hurst asserts that the federal Rehabilitation Act provides a separate basis for the
trial court's jurisdiction. She asserts that by accepting federal funds under the
Rehabilitation Act, the state of Texas waived its sovereign immunity from suit in its own
courts. DARS responds that the federal court has already determined this issue in DARS's
favor. See Hurst, 482 F.3d at 814. Thus, DARS argues that res judicata applies to
preclude Hurst from relitigating this issue. 

 First, we note that the federal district court and the Fifth Circuit have already
rejected Hurst's argument, and the Supreme Court denied review. Id. Hurst argues that
the same sovereign immunity analysis does not apply in state court as in federal court;
therefore, we should not hold that Texas retains sovereign immunity based on the federal
court's ruling. Hurst offers no support for her contention. In fact, Eleventh Amendment
immunity applies to state-court suits for violations of federal law. See Alden v. Maine, 527
U.S. 706, 712 (1999); see also Klebe v. Univ. of Tex. Sys., No. 03-05-00527-CV, 2007 WL
2214344, at *5 (Tex. App.-Austin July 31, 2007, no pet.) (mem. op.). Even if we agreed
with Hurst that her argument was not barred by res judicata, (10)
 the Texas Supreme Court
has explained that we are bound to follow federal interpretations of Eleventh Amendment
immunity. See Hoff v. Nueces County, 153 S.W.3d 45, 49 (Tex. 2004). While the Fifth
Circuit's pronouncements are not binding on this Court as a United States Supreme Court
decision would be, it is persuasive authority. Brooks v. Ctr. for Healthcare Servs., 981
S.W.2d 279, 286 (Tex. App.-San Antonio 1998, no pet.).

 As the Fifth Circuit correctly noted, "[a] state waives its immunity by voluntarily
participating in federal spending programs only when Congress includes a clear statement
of intent to condition participation in the programs on a State's consent to waive its
constitutional immunity." Hurst, 482 F.3d at 811 (citing Atascadero State Hosp. v. Scanlon,
473 U.S. 234, 247 (1985)). Requiring a clear statement that acceptance of funds is
conditioned on a waiver of immunity allows states to make an informed, voluntary decision
as to whether to accept the funds. Id. (citing Pace v. Bogalusa City Sch. Bd., 403 F.3d
272, 279 (5th Cir. 2005)). "In seeking to determine whether the language of a condition
is sufficiently clear, courts must view the statute 'from the perspective of a state official who
is engaged in the process of deciding whether the state should accept [federal] funds and
the obligations that go with those funds,' asking 'whether . . . a state official would clearly
understand [the nature of the condition].'" Id. (quoting Arlington Cent. Sch. Dist. Bd. Of
Educ. v. Murphy, 548 U.S. 291, 296 (2006)).

 Applying this test to the federal Rehabilitation Act's judicial review provision in 29
U.S.C. § 722(c)(5)(J)(i), the Fifth Circuit held that the authorization for judicial review was
a "general authorization for suit" and not a clear statement by Congress that states were
waiving sovereign immunity by accepting federal funds. Id. at 812. We agree. In
Atascadero, the Supreme Court addressed a separate provision in the federal
Rehabilitation Act that provided:

 the remedies, procedures and rights set forth in Title VI of the Civil Rights Act
of 1964 [42 U.S.C.A. § 2000d et seq.] [including the right to sue in federal
court to enforce obligations imposed under the statute] shall be available to
any person aggrieved by any act or failure to act by any recipient of federal
assistance or federal provider of such assistance under section 504 [29
U.S.C. § 794] of this title.


Hurst, 482 F.3d at 812 (quoting 29 U.S.C. § 794a). The Supreme Court held that even
though states are recipients of federal assistance under the act, the statute was merely a
general authorization for suit that did not waive Eleventh Amendment immunity. 
Atascadero, 472 U.S. at 245-46. Interestingly, after Atascadero was decided, Congress
amended the statute to make its intent clear:

 A State shall not be immune under the Eleventh Amendment of the
Constitution of the United States from suit in Federal court for a violation of
section 504 of the Rehabilitation Act of 1973, title IX of the Education
Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil
Rights Act of 1964, or the provisions of any other Federal statute prohibiting
discrimination by recipients of Federal financial assistance.


42 U.S.C. § 2000d-7. 

 The relevant provision of the federal Rehabilitation Act provides:

 Any party aggrieved by a final decision described in subparagraph (I), may
bring a civil action for review of such decision. The action may be brought in
any State court of competent jurisdiction or in a district court of the United
States of competent jurisdiction without regard to the amount in controversy.


29 U.S.C. § 722(c)(5)(J)(i). While this statute is more clear as to whom it applies, it is still
only a general authorization for suit. See Atascadero, 473 U.S. at 245-46. Accordingly,
we agree with the Fifth Circuit that Congress did not clearly state that by accepting federal
funds, the State of Texas would waive its Eleventh Amendment immunity.

 Second, as we stated above, even if we agreed that Eleventh Amendment immunity
was waived, we must apply state procedural requirements to federal causes of action
brought in state court. See Exxon Corp., 881 S.W.2d at 306 n.9; see also Smith &
Assocs., LLP, 169 S.W.3d at 822. Hurst does not explain why the Texas Legislature was
not free to impose a filing deadline as a condition of the waiver of sovereign immunity. 

 As we stated above, the federal Rehabilitation Act does not contain a limitations
period, nor does it require states accepting funds under the program to allow for a long
filing period. See 29 U.S.C. § 722(c)(5)(J)(i). Moreover, 29 U.S.C. § 722(c)(5)(J)(i) allows
suit in a state court "of competent jurisdiction," which necessarily means that the state's
jurisdictional statues would still apply to any action brought under the federal law. Id.; see
also Richards v. Alibozek, No. CV010510286S, 2002 WL 1815918, at *5 (Conn. Super. Ct.
June 26, 2002) (not designated for publication) ("Moreover, because the General Assembly
has not waived sovereign immunity for suits under the Rehabilitation Act, the state court
is not a court 'of competent jurisdiction' within § 722(c)(5)(J)(i). A court of 'competent
jurisdiction' is one that at least has subject matter jurisdiction under that forum's
jurisdictional statutes."). Under these circumstances, even if the Texas Legislature waived
sovereign immunity by accepting federal funds, there is nothing in the federal Rehabilitation
Act that precludes the use of a filing deadline to speed the process of administrative
review. Accordingly, we reject Hurst's argument that the federal Rehabilitation Act
provides a separate basis for jurisdiction such that she was not required to file her suit for
judicial review within 30 days.

 Correspondingly, Hurst argues that by adopting regulations that appear to allow suit
in federal or state court, DARS waived sovereign immunity. See 40 Tex. Admin. Code §
107.413. However, the legislature has not delegated authority to DARS to waive sovereign
immunity, which is a function reserved to the legislature. City of LaPorte v. Barfield, 898
S.W.2d 288, 291 (Tex. 1995). Accordingly, DARS's adoption of regulations could not
waive sovereign immunity. 

C. Hurst's Claims for Prospective, Declaratory Relief

 While we agree with DARS that Hurst's claims seeking review of its administrative
decision to deny her benefits is barred by sovereign immunity, her claims for declaratory
relief are entirely separate and require a separate analysis. Hurst seeks a declaration that
DARS's policy of refusing "exploratory back surgery" is contrary to the federal
Rehabilitation Act. This type of claim does not implicate the doctrine of sovereign
immunity.

 "Sovereign immunity, unless waived, protects the State from lawsuits for damages."
Gen. Serv. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001) (emphasis
added); see also IT-Davy, 74 S.W.3d at 853; Hawkins v. El Paso First Health Plans, Inc.,
214 S.W.3d 709, 716-18 (Tex. App.-Austin 2007, pet. filed) (holding that suit for
declaratory relief was not a suit against the State because it did not seek to impose liability
or seek money damages). Sovereign immunity is based on the premise that the
legislature's policy-making function deserves protection. IT-Davy, 74 S.W.3d at 854. For
example, sovereign immunity bars a claim for damages arising out of a breach of contract
unless a waiver of sovereign immunity can be established or consent is obtained from the
legislature. Id. This ensures that current policymakers are not bound by their predecessors'
long-term contracts and can respond to changing conditions in the public's best interest.
Id.

 Certain types of actions, however, do not implicate these concerns and, therefore,
do not implicate the sovereign immunity doctrine. Nueces County v. Ferguson, 97 S.W.3d
205, 217 (Tex. App.-Corpus Christi 2002, no pet.). For example, suits for declaratory relief
do not implicate the sovereign immunity doctrine. See IT-Davy, 74 S.W.3d at 855;
Hawkins, 214 S.W.3d at 716; City of Dallas v. Blanton, 200 S.W.3d 266, 279 (Tex. App.-
Dallas 2006, no pet.); Ferguson, 97 S.W.3d at 218. "[N]o consent is required when suit is
filed seeking only a declaration or enforcement of rights." Ferguson, 97 S.W.3d at 217;
see also Sefzik v. Tex. Dep't of Transp., No. 13-06-550-CV, 2008 WL 2454228, at *3 (Tex.
App.-Corpus Christi June 19, 2008, no pet. h.). "Suits to compel state officers to act within
their official capacity do not attempt to subject the State to liability." IT-Davy, 74 S.W.3d
at 855; Hawkins, 214 S.W.3d at 716-18; Blanton, 200 S.W.3d at 279 ("A party generally
can maintain a suit to determine its rights without legislative permission because such suits
are not considered 'suits against the State' for purposes of sovereign immunity."). Suits for
declaratory relief do not hamper policymakers' ability to perform in the public interest by
binding them to outdated or expired policies. Sefzik, 2008 WL 2454228, at *4. "If a statute
sought to be construed through a declaratory judgment is outdated, and thus a declaration
of rights under that statute causes problems for the general public, it is the policymakers'
job to change the statute, not to ignore it or violate it with impunity." Id.

 DARS argues that Hurst's claim for prospective, declaratory relief is a veiled attempt
to obtain compensation and, therefore, is barred by sovereign immunity. DARS reasons
that the only effective, prospective relief would be an order requiring DARS to expend
funds for her surgery. We disagree. 

 Hurst pleaded her claims for declaratory relief as a separate remedy. While Hurst's
claim for declaratory relief will not ultimately result in a reversal of DARS's prior denial of
benefits or in the immediate payment for her surgery, she alleges she has been injured by
DARS's failure to comply with the law governing its operations. Hurst continues to suffer
from her disability, and it is certainly possible that she may require a different type of
surgery on her back as her disability progresses that may again be characterized as
"exploratory surgery." To that extent, Hurst will benefit from a declaration that DARS's
policies are contrary to law. See City of Round Rock v. Whiteaker, 241 S.W.3d 609, 633-34 (Tex. App.-Austin 2007, pet. filed).

D. DARS's policy of prohibiting exploratory back surgery

 As a final effort, Hurst spends several pages of her brief arguing that DARS's policy
of prohibiting benefits for exploratory back surgery is contrary to law. Essentially, through
this argument she asks this Court to grant her the declaratory relief that she requested in
the trial court. As this is an appeal from an order granting DARS's plea to the jurisdiction,
it is inappropriate for this Court to delve into the merits of her claims. Bland Indep. Sch.
Dist., 34 S.W.3d at 554; Sefzik, 2008 WL 2454228, at *5. The trial court must consider this
issue on remand.

IV. Conclusion

 We hold that Hurst's claim for judicial review of DARS's administrative decision is
barred by sovereign immunity. Accordingly, we affirm the trial court's order dismissing that
claim for lack of jurisdiction. However, Hurst's claim for prospective, declaratory relief does
not implicate the doctrine of sovereign immunity. Accordingly, we reverse the trial court's
order dismissing Hurst's claim for prospective, declaratory relief and remand those claims
to the trial court for further proceedings.


 ______________________________

 GINA M. BENAVIDES,

 Justice



Memorandum Opinion delivered and

filed this the 23rd day of October, 2008. 

 

1. This section provided: 


 Any party who disagrees with the findings and decision of an impartial hearing officer under
§ 104.4(b) of this title (relating to Mediation and Due Process Hearings) have a right to bring
a civil action with respect to the matter in dispute. The action may be brought in any State
court of competent jurisdiction or in a district court of the United States of competent
jurisdiction without regard to the amount in controversy. 

 

40 Tex. Admin. Code § 107.413(a) (2003). This rule was repealed on August 31, 2007. See 32 Tex. Reg.
4778 (2007). Contemporaneous with the repeal of section 107.413, DARS proposed rule 101.7045(a), which
became effective August 31, 2008 and provides that "[a]ny party who disagrees with the findings and decision
of an impartial hearing officer has a right to bring a civil action in any court of competent jurisdiction without
regard to the amount in controversy." 40 Tex. Admin. Code § 101.7045 (2008). Because section 107.413 was
in effect at the time that Hurst filed her lawsuits in state and federal court, we will cite to the former provision
in the administrative code.

2. DARS was formerly known as the Texas Rehabilitation Commission. Effective March 7, 2004,
DARS replaced the Texas Rehabilitation Commission. Tex. Human Res. Code Ann. §§ 117.001-.074 (Vernon
Supp. 2008). The actions described in the background section prior to March 7, 2004, were taken by the
Texas Rehabilitation Commission, but we will refer to the commission as DARS for ease of reference.
3. The Fifth Circuit later affirmed the federal court's dismissal of Hurst's action, and the United States
Supreme Court denied Hurst's petition for writ of certiorari. Hurst, 482 F.3d 809, 809 (5th Cir. 2007), cert.
denied, 128 S.Ct. 490 (2007). 
4. The case was transferred to this Court pursuant to a docket equalization order issued by the
Supreme Court of Texas. See Tex. Gov't Code Ann. § 73.001 (Vernon 2005).
5. Hurst argues that the trial court could have decided the case without reaching the constitutional issue
of sovereign immunity by merely dismissing her claim for failure to comply with the 30-day deadline in Texas
Government Code section 2001.176. See Tex. Gov't Code Ann. § 2001.176. However, as DARS points out,
Texas Government Code section 2001.176 is a limited waiver of sovereign immunity for challenges to
administrative decisions in contested case proceedings. See Tex. Dep't of Protective & Regulatory Servs.
v. Mega Child Care, 145 S.W.3d 170, 198 (Tex. 2004). Thus, the trial court was required to address its
jurisdiction before proceeding to the merits of the case. 
6. The IDEA provides:


 Any party aggrieved by the findings and decision made under subsection (f) or (k) of this
section who does not have the right to an appeal under subsection (g) of this section, and
any party aggrieved by the findings and decision made under this subsection, shall have the
right to bring a civil action with respect to the complaint presented pursuant to this section,
which action may be brought in any State court of competent jurisdiction or in a district court
of the United States, without regard to the amount in controversy.


20 U.S.C. § 1415(i)(2)(A).
7. The federal Rehabilitation Act provides:


 Any party aggrieved by a final decision described in subparagraph (I), may bring a civil action
for review of such decision. The action may be brought in any State court of competent
jurisdiction or in a district court of the United States of competent jurisdiction without regard
to the amount in controversy.

 

29 U.S.C. § 722(c)(5)(J)(i).
8. Hurst also cites Burnett v. Grattan, 468 U.S. 42 (1984). That case also involved a federal court
"borrowing" a state law limitations period and applying it to a federal cause of action pending in federal court. 
Id. at 44.

9. Section 311.034 provides: 


 In order to preserve the legislature's interest in managing state fiscal matters through the
appropriations process, a statute shall not be construed as a waiver of sovereign immunity
unless the waiver is effected by clear and unambiguous language. In a statute, the use of
"person," as defined by Section 311.005 to include governmental entities, does not indicate
legislative intent to waive sovereign immunity unless the context of the statute indicates no
other reasonable construction. Statutory prerequisites to a suit, including the provision of
notice, are jurisdictional requirements in all suits against a governmental entity.


Tex. Gov't Code Ann. § 311.034 (Vernon 2005).
10. See, e.g., Tex. A & M Univ. Sys. v. Luxemburg, 93 S.W.3d 410, 418 (Tex. App.-Houston [14 Dist.]
2002, pet. denied) ("Because the federal court lacked jurisdiction over Luxemburg's claims in the present suit,
we must conclude that res judicata does not apply."); Jackson v. Univ. of Tex. Health Science Ctr. Police
Dep't, No. 04-03-00553-CV, 2004 WL 572330, at *3 (Tex. App.-San Antonio Mar. 24, 2004, no pet.) (mem.
op.) ("Consequently, res judicata did not bar Jackson from bringing these claims in state court since they were
barred by immunity and dismissed in federal court for lack of subject matter jurisdiction.").